UNITED STATES of America, Plaintiff,

v.

Osvaldo CARDENAS–YANEZ, Defendant.

No. 85–610–CR.

United States District Court, S.D. Florida.

June 20, 1990.

Richard C. Klugh, Federal Public Defender, for defendant.

Anthony Sanchez, Asst. U.S. Atty., for plaintiff.

## MEMORANDUM OPINION

SCOTT, District Judge.

This Cause has come before the Court upon consideration of the probationary status of Osvaldo Cardenas–Yanez ("Cardenas–Yanez"). It is alleged that Cardenas–Yanez has violated several conditions of probation previously imposed by this Court. As a result, the Government requests that his term of probation be revoked. Having carefully reviewed the record and applicable case authority, as well as having conducted two hearings on this matter, the Court now makes the following rulings.

### I. FACTUAL BACKGROUND

Cardenas–Yanez has brought to this Court a criminal resume containing several dubious entries. Among such entries is a 1985 narcotics conviction. Specifically, Cardenas–Yanez was charged in a Two Count Indictment of conspiring and possessing with an intent to distribute marijuana.[1] Following a jury trial before the undersigned, Cardenas–Yanez was found guilty as to each Count.[2]

On December 12, 1985, Cardenas–Yanez was sentenced for his misdeeds. The following represents the sentence imposed:

1. *Count I:* As to Count I a term of five years reporting probation was imposed.

2. *Count II:* As to Count II a term of three years imprisonment was imposed. This term of imprisonment

was to be followed by a Special Parole term of three years.[3]

3. The term of reporting probation was to run consecutive to the period of imprisonment imposed under Count II.

*See, Judgment And Probation/Commitment Order.*

Several months later, on October 13, 1986, Cardenas–Yanez was paroled from prison, thus ending the period of imprisonment imposed under Count II. However, due to an Immigration and Naturalization Service ("INS") detainer that had been lodged against him, Cardenas–Yanez was paroled into the custody of the INS rather than being released into the community. He remained in INS custody until April 18, 1988.

Soon after his release from INS custody, Cardenas–Yanez once again ran afoul of the law. Specifically, within a span of seventeen weeks, Cardenas–Yanez tested positive for narcotics use on four separate occasions.[4] In addition, he was convicted of illegally selling federal reserve notes (Case No. 89–63–CR–HOEVELER). Following this conviction, on May 23, 1989, Judge Hoeveler imposed a sentence of nine months imprisonment to be followed by an eighteen month period of supervised release. On January 12, 1990, Cardenas–Yanez was released from prison and sent to the Community Correctional Center. Less than one month after his release from prison, Cardenas–Yanez again tested positive for narcotics use.

As a result of these criminal transgressions, the United States Probation Office requested that this Court issue an arrest warrant for Cardenas–Yanez. This was done on March 3, 1990. Shortly after this

---

1. Specifically, Count I of the Indictment charged Cardenas–Yanez with engaging in a conspiracy in violation 21 U.S.C. § 955c. Count II of the Indictment was the actual substantive Count which charged Cardenas–Yanez with possession of a quantity of marijuana with an intent to distribute in violation of 21 U.S.C. § 955a(a) and 18 U.S.C. § 2.

2. This conviction was subsequently affirmed by the Eleventh Circuit Court of Appeals on August 22, 1986.

3. Actually, Cardenas–Yanez was originally sentenced to a five year term of incarceration which was suspended in favor of the probation period associated with Count I.

4. Specifically, Cardenas–Yanez submitted "dirty urine" samples on September 20, 1988; October 4, 1988; October 6, 1988; and January 27, 1989.

arrest, the Court conducted an initial probation violation hearing.[5] At that time Cardenas–Yanez raised several legal issues which the Court deemed worthy of additional consideration. Specifically, Cardenas–Yanez has argued the following: (1) First, that his term of probation had not yet commenced, therefore, a violation of such probation would be impossible; (2) Second, that his procedural due process rights were violated because he was not formally documented or otherwise reinformed of the commencement of his term of probation; and (3) Third, that his substantive due process rights were violated as a result of the delay on the part of the Probation Office in bringing his violations to this Court's attention. Having thoroughly considered these matters the Court is convinced that the arguments presented by Cardenas–Yanez are without merit.

## II. LEGAL ANALYSIS

### (A) Commencement of Probationary Period

■ Initially, Cardenas–Yanez takes the position that he could not have violated the conditions of probation because his probationary term had not yet commenced at the time the violations described above were committed. In essence, Cardenas–Yanez asserts that his term of probation was to run consecutive to his three year term of special parole which did not begin until he was released from INS custody in 1988. Therefore, it is asserted that the probationary term was not to commence until 1991. As a result, Cardenas–Yanez asserts that these violations were committed solely during the period of parole rather than during the period of probation.

However, Cardenas–Yanez reaches this conclusion by completely misconstruing the Judgment and Probation/Commitment Or-

der of December 12, 1985. A plain reading of this document indicates the disingenuous nature of his argument. The Judgment and Probation/Commitment Order expressly states that the term of probation "is to run consecutive to the period of imprisonment imposed under Count Two." Further, as indicated by the Judgment Order, it was the intention of the sentencing Judge that the terms of parole and probation run concurrently. Accordingly, the term of probation began to run on October 13, 1986, when Cardenas–Yanez was paroled from prison. Therefore, the violations occurred while Cardenas–Yanez was on probation.[6]

### (B) Procedural Due Process

■ Next, Cardenas–Yanez asserts that his right to Procedural Due Process has been violated because the Probation Office did not formally document or reinform him of the probationary conditions upon his release from prison. This argument also misses the mark.

By necessity, the courts undertake a "common sense" analysis when considering whether lack of formal documentation or failure to reinform a defendant of probationary conditions is violative of due process. That is, where a condition of probation is an act otherwise, not illegal, then the defendant must be made aware of such condition immediately prior to the commencement of the probationary term. However, if the condition violated was something ordinarily illegal or otherwise contrary to good behavior then knowledge of such condition is imputed to the defendant and lack of formal documentation or renotification is not fatal. *See, Tiitsman v. Black*, 536 F.2d 678 (6th Cir.1976); *United States v. Dane*, 570 F.2d 840, 844 (9th Cir.1977) ("[K]nowledge of the criminal law is imputed to the probationer, as is an

---

5. Generally, a single hearing is sufficient when considering a probation violation case. However, due to the issues raised by Cardenas–Yanez at the initial hearing, the Court decided to take this matter under advisement and reconvene for a second hearing on May 18, 1990.

6. The time spent in custody of the INS subsequent to being released from prison does not

serve to toll the commencement of either a term of probation or parole. *See generally, Hernandez v. Bd. of Probation & Parole*, 120 Pa.Cmwlth. 171, 548 A.2d 380 (1988). However, even if the Court were to hold otherwise, it would be irrelevant in this case because all of the probation violations in question occurred after Cardenas–Yanez was released from INS custody.

understanding that violation of the law will lead to the revocation of probation"). *Carradine v. United States*, 420 A.2d 1385, 1390 (D.C.Cir.1980) (In order to revoke probation of a defendant consistent with due process, defendant must have acted in a way that foreseeably could result in revocation). Accordingly, Cardenas–Yanez's conduct of ingesting narcotics and selling federal reserve notes was of such a nature that he certainly should have been aware that it would violate a condition of his probation. Simply put, it would only encourage wilfull blindness if this Court would allow a probationer to protest ignorance after engaging in overtly criminal conduct. Therefore, the right of procedural due process has not been violated.[7]

(C) Substantive Due Process

■ Finally, Cardenas–Yanez contends that he was denied the right to substantive due process due to the Probation Office's delay in bringing the probation violations to this Court's attention. Simply, he contends that because his terms of parole and probation ran concurrently that this delay has resulted in double punishment. That is, it has prevented him from receiving a probation violation sentence that would run concurrently to his parole violation sentence.[8] This argument must fail.

In essence, Cardenas–Yanez is asking this Court to consider a hypothetical. Had these violations been brought to this Court's attention in a more timely fashion there is simply no guarantee that the probation violation sentence would have been ordered to run concurrent to the parole violation sentence.

In addition, due to developments subsequent to the parole violation hearing this delay argument is rendered virtually moot. On February 11, 1990, after his parole had already been revoked, Cardenas–Yanez submitted yet another "dirty urine" sample. Thus, Cardenas–Yanez's own criminal conduct has destroyed both the logic and relevance of the instant argument.

## III. CONCLUSION

Based on the foregoing analysis and the authorities cited therein, it is hereby ORDERED and ADJUDGED as follows:

1. The period of probation previously imposed by this Court is hereby revoked.

2. The defendant is committed to the custody of the Attorney General or his authorized representative for a period of three (3) years as to Count I of the Indictment.

3. The defendant shall be given credit for time previously served.

4. Further, it is recommended that the defendant be confined at a minimum/moderate facility where he can receive treatment for his drug addiction.

DONE and ORDERED.

■

---

7. In no way should this conclusion be interpreted as condoning the conduct practiced by the Probation Office in this instance. However, considering the nature of Cardenas–Yanez's conduct, the Court is constrained by existing case authority in reaching its decision.

8. In February of 1989, parole violation proceedings were commenced against Cardenas–Yanez. As a result, his parole was revoked and his term of incarceration for another conviction was extended.