105 P.3d 1197

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Carolyn BRIGHTER, Defendant–
Appellant.**

No. 25269.

Intermediate Court of Appeals of Hawai'i.

Jan. 5, 2005.

Traci Rei Morita, deputy public defender, State of Hawai'i (Cindy A.L. Goodness, deputy public defender, State of Hawai'i, on the briefs) for defendant-appellant.

Janet R. Garcia, deputy prosecuting attorney, County of Hawai'i, for plaintiff-appellee.

WATANABE, Acting C.J., and LIM, J.; with FOLEY, J., Concurring Separately.

Opinion of the Court by WATANABE, Acting C.J.

Defendant–Appellant Carolyn Brighter (Brighter, Miss Brighter, or Ms. Brighter)

appeals from the "Order Granting [Plaintiff–Appellee State of Hawai'i's (the State)] Motion to Impose Suspended Fine" entered on July 15, 2002 by the District Court of the Third Circuit (the district court).[1] We conclude that the district court lacked authority to impose the suspended fine. Accordingly, we reverse.

## BACKGROUND

On May 12, 2001, Brighter was issued Complaint & Summons No. 1715355MH (Citation 1), charging her with operating or using a vehicle without no-fault insurance,[2] in violation of Hawaii Revised Statutes (HRS) § 431:10C–104 (Supp.2003).[3] Brighter was the owner of the vehicle she was operating when Citation 1 was issued.

Brighter appeared in district court[4] on August 1, 2001 and entered a no-contest plea to the Citation 1 charge, pursuant to a plea agreement. At the request of Brighter's counsel, however, sentencing was continued until September 12, 2001 to allow Brighter to obtain insurance.

On September 12, 2001, Brighter appeared in district court[5] for sentencing. The relevant sentencing statute, HRS § 431:10C–117(a) (Supp.2003), provided then as it does now, in pertinent part, as follows:

**Penalties.**

(a) . . .;

(2) Notwithstanding any provision of the Hawaii Penal Code:

(A) Each violation shall be deemed a separate offense and shall be subject to a fine of not less than $100 nor more than $5,000 which shall not be suspended except as provided in subparagraph (B); and

(B) If the person is convicted of not having had a motor vehicle insurance policy in effect at the time the citation was issued, the fine shall be $500 for the first offense and a minimum of $1,500 for each subsequent offense that occurs within a five-year period from any prior offense; *provided that the judge:*

(i) *Shall have the discretion to suspend all or any portion of the fine if the defendant provides proof of having a current motor vehicle insurance policy;* provided further that upon the defendant's request, the judge may

---

1. The "Order Granting [Plaintiff–Appellee State of Hawai'i's] Motion to Impose Suspended Fine" was entered by Judge Jeffrey Choi (Judge Choi).

2. Although Defendant–Appellant Carolyn Brighter (Brighter) was charged with the offense of "no no-fault insurance," such an offense no longer exists. In 1997, the state legislature overhauled Hawaii Revised Statutes (HRS) chapter 431:10C, the motor vehicle insurance law, and replaced statutory references to "no-fault policy" with "motor vehicle insurance policy." 1997 Haw. Sess. L. Act 251 at 514. Therefore, the offense is more properly referred to as "no motor vehicle insurance policy."

3. HRS § 431:10C–104 (Supp.2003) provides, both now and as it did when Brighter was cited, as follows:

**Conditions of operation and registration of motor vehicles.** (a) Except as provided in section 431:10C–105, no person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a motor vehicle insurance policy.

(b) Every owner of a motor vehicle used or operated at any time upon any public street, road, or highway of this State shall obtain a motor vehicle insurance policy upon such vehicle which provides the coverage required by this article and shall maintain the motor vehicle insurance policy at all times for the entire motor vehicle registration period.

(c) Any person who violates the provisions of this section shall be subject to the provisions of section 431:10C–117(a).

(d) The provisions of this article shall not apply to any vehicle owned by or registered in the name of any agency of the federal government, or to any antique motor vehicle as defined in section 249–1.

HRS § 431:10C–104 (Supp.2003).

4. Judge Choi presided.

5. Judge Sandra P. Schutte (Judge Schutte) presided.

grant community service in lieu of the fine, of not less than seventy-five hours and not more than one hundred hours for the first offense, and not less than two hundred hours nor more than two hundred seventy-five hours for the second offense; and

(ii) May grant community service in lieu of the fine for subsequent offenses at the judge's discretion;

(3) *In addition to the fine in paragraph (2), the court shall either:*

(A) *Suspend the driver's license of the driver* or of the registered owner for:

(i) Three months for the first conviction; and

(ii) One year for any subsequent offense within a five-year period from a previous offense;

provided that the driver or the registered owner shall not be required to obtain proof of financial responsibility pursuant to section 287–20; *or*

(B) *Require the driver* or the registered owner *to keep a nonrefundable motor vehicle insurance policy in force for six months;*

. . . .

(5) *In the case of multiple convictions for driving without a valid motor vehicle insurance policy within a five-year period from any prior offense, the court, in addition to any other penalty, shall impose the following penalties:*

(A) Imprisonment of not more than thirty days;

(B) Suspension or revocation of the motor vehicle registration plates of the vehicle involved;

(C) Impoundment, or impoundment and sale, of the motor vehicle for the costs of storage and other charges incident to seizure of the vehicle, or any other cost involved pursuant to section 431:10C–301; or

(D) Any combination of those penalties.

HRS § 431:10C–117(a) (emphases added).

At the outset of the hearing, Brighter's counsel reminded the district court why sentencing had been continued:

Judge, we were continuing this to see if we could get proof of current insurance for Miss Brighter. She does have some documentation referring to the policy of her parents. I wasn't sure if this would actually help us or not so I contacted the insurance company. Apparently Miss Brighter's situation, from the insurance agent that I spoke with, is that she is covered under her parents' policy as a member of the household. However, she's not a named insured on the policy. So the insurance company said she is covered driving any vehicles covered under her parents' policy. Where if she drives another vehicle she is not covered. And she's not, I guess, a named insured on the policy.

So I don't know how that affects us here today, but that is her current insurance situation. She has insurance covering vehicles under her parents' policy but not covering any other vehicles.

The following discussion then ensued:

THE COURT: [Deputy Prosecutor], what's your position on that?

[DEPUTY PROSECUTOR]: That's being a little tenuous for my satisfaction, Judge. But it's up to the [c]ourt whether that is proof. Cause we're here for sentencing, not for dismissal.

THE COURT: I understand that.

[DEPUTY PROSECUTOR]: But appears that this vehicle apparently is not her parents' vehicle so we don't have proof of insurance of that. Um, she is not a named insured on the policy and—

THE COURT: What insurance carrier is she?

[DEPUTY PUBLIC DEFENDER]: State Farm Insurance.

THE COURT: Well they should be providing verification that she's covered.

[DEPUTY PUBLIC DEFENDER]: Here's what they provided—

THE COURT: Did they provide verification that she's covered?

[DEPUTY PUBLIC DEFENDER]: Here's what their policy says:

"The following list of drivers is shown for informational purposes only, does not extend or expand coverage beyond that contained in this automobile policy.

"Our records indicate that persons listed below are the only licensed drivers reported to us. Edward Brighter, Billy Brighter, Kimo Brighter, Carolyn Patterson," who is Carolyn Brighter, "and Anela Brighter."

THE COURT: So they did at least acknowledge that.

[DEPUTY PUBLIC DEFENDER]: They acknowledged that, that she's a member of the household listed on the policy, but she's not—I don't know how the policy—

THE COURT: I'll accept that.

[DEPUTY PUBLIC DEFENDER]: Okay.

. . . .

THE COURT: Is there registration for the vehicle now . . . ?

[DEPUTY PUBLIC DEFENDER]: This vehicle is junked.

The district court then proceeded to sentence Brighter:

THE COURT: . . . .

On the insurance you are sentenced to a fine of $1,500. But I'm going to suspend $1,400 of that for six months in light of there—that you do have present coverage.[6] Plus you're assessed $25 to the Crime Victim's Claims Fund, $20 in administrative fees, and $7 to the Driver's Education Fund.

. . . .

. . . I'm going to order monthly payments of $25 a month.

Miss Brighter, . . . you have a case in Hamakua? Is that easier for you in Hamakua?

[MISS BRIGHTER]: No.

THE COURT: You're supposed to come back next week. You've been making payments, though, on your other matter?

[MISS BRIGHTER]: Yeah. Now I have one payment left.

THE COURT: Instead of coming back next week, I'll let you sign a notice so we'll continue all of this for three months. Because you've been making your payments regularly.

THE CLERK: December 12th at 9 a.m.

THE COURT: Miss Brighter, you want—it's easier for your Hamakua case to be here?

[MISS BRIGHTER]: Yes.

THE COURT: Alright [sic]. We'll continue this all for three months.

(Footnote added.) According to the transcript of the proceedings, the district court did not advise Brighter of any conditions attached to her suspended sentence. The record on appeal similarly contains no indication that Brighter was advised in writing of any conditions attached to her suspended sentence. It does not appear that Brighter was informed, for example, that she was required to remain conviction-free for the six-month period of suspension.

At the December 12, 2001 continued hearing, the district court scheduled a "for payment" hearing for March 13, 2002, at 9 a.m.

On December 28, 2001, within the six-

6. Based on our review of the record, it appears that the District Court of the Third Circuit's (the district court or the court) sentence of Brighter did not comply with the mandatory requirements of HRS § 431:10C–117(a)(3) (Supp.2003), since the district court did not suspend Brighter's driver's license or require Brighter "to keep a nonre-fundable motor vehicle insurance policy in force for six months." It also appears that the district court's sentence of Brighter did not comply with HRS § 431:10C–117(a)(5) (Supp.2003), since the court did not impose on Brighter at least one of the mandatory penalties set forth in that statutory provision.

month suspension period[7] for Citation 1, Brighter received Complaint & Summons No. 1234129MH (Citation 2), charging her with not having motor vehicle insurance. Brighter's initial appearance in district court for the Citation 2 charge occurred on February 7, 2002. The court calendar for that day notes that Brighter did not yet have insurance and would obtain insurance when her car was fixed. The matter was continued until March 7, 2002 for arraignment and plea and to allow Brighter to obtain proof of current insurance.

At the March 7, 2002 hearing, Brighter presented a State Farm insurance card, effective for the period from February 25, 2002 to February 25, 2003. The district court referred Brighter to the Public Defender's office and continued the case until April 18, 2002 for arraignment and plea.

On March 13, 2002, Brighter failed to appear at the "for payment" hearing that had been set on December 12, 2001. Consequently, the district court ordered a bench warrant issued for her arrest, with bail set at $50. The bench warrant was served on Brighter on April 8, 2002.

On April 18, 2002, Brighter appeared in district court[8] and entered, pursuant to a plea agreement, a no-contest plea to the Citation 2 charge. Brighter's counsel then asked that sentencing be continued, since Brighter had forgotten "her proof of current insurance." The following colloquy then ensued:

THE COURT: Did [Brighter] get picked up on the bench warrant yet?

[DEPUTY PUBLIC DEFENDER]: Yes, Your Honor. We're asking the [c]ourt to continue sentencing in this matter and that it be set on May 8th in South Kohala, which is May 8th.

She showed it previously. Well, the calendar shows she showed it last time. And if the State and the [c]ourt will accept it, perhaps we can go ahead and do the sentencing.

THE COURT: Well, what about the fact that, uh, if she goes ahead and pleads, it would appear that she owes 14 hundred dollars from the suspended portion of the last ticket, which would mean she's exposed to $2,900 worth of fines today? Not to mention the 30 days in jail for contempt.

[DEPUTY PUBLIC DEFENDER]: My position with regard to that, Judge, would be first that, uh, that issue needs to be triggered by way of a motion and notice, and, uh, the State is free to do so if it chooses.

It doesn't change her position today, that is, that, uh, she had no insurance for this vehicle at the time she was cited and she has since insured the vehicle.

THE COURT: Okay, Ms. Brighter, as long as you understand, uh, that the no-fault insurance charge carries a possible 30 days in jail, 15 hundred dollars fine minimum, plus the 14 hundred that was suspended.

Any questions?

[BRIGHTER]: No.

. . . .

[DEPUTY PUBLIC DEFENDER]: You're gonna sentence her today or you're gonna continue that to the—

THE COURT:—well, I assume she would prefer to continue.

[DEPUTY PUBLIC DEFENDER]: Then what we'd ask, Judge, is that it be set in South Kohala on May 8th, which is the date for the other matters.

THE COURT: Uh, [Deputy Prosecutor], is the State going to file a motion then?

[DEPUTY PROSECUTOR]: Yeah, put it all on that calendar, yeah.

THE COURT: All right.

[DEPUTY PUBLIC DEFENDER]: So May 8th then in South Kohala. That's at 9:00 o'clock?

---

7. Commencing from the day the suspended sentence was entered, the six-month period was scheduled to expire on or about March 11, 2002.

8. Judge Choi presided.

THE COURT: Yes.

On May 8, 2002, Brighter appeared for sentencing on the Citation 2 charge and payment of a fine installment due for Citation 1. At the outset of the hearing, the deputy prosecutor brought to the district court's [9] attention that Brighter had a new contempt of court charge for failure to appear at the March 13, 2002 "for payment" hearing. The district court reminded Brighter that she still owed $132, admonished her to make her monthly payments of $25, and warned her that a jail sentence and another contempt of court charge might result if Brighter did not pay her fines.[10] The State indicated that it intended to file a motion to impose the suspended sentence for Citation 1, but that the motion "just wasn't ready to be filed." The matter was continued until June 19, 2002.

On May 22, 2002, more than two months after the six-month suspended fine period for Citation 1 had expired, the State filed its Motion to Impose Suspended Fine regarding Citation 1. The Declaration of Counsel attached to the State's motion states, in relevant part:

2. I have reviewed the files herein and find that [Brighter] was sentenced on Sept. 12, 2001, and as part of that sentence for no no fault insurance under citation [1], $1,400 of her fine was suspended.

3. A suspended sentence imposes an obligatory requirement that [Brighter] not commit another offense during the term of suspension.

4. I am aware that on April 18, 2002, [Brighter] pled no contest to a no insurance charge under citation [2], wherein the date of offense was December 28, 2001.

5. Based on the foregoing, I believe the suspended fine should be imposed.

Brighter's counsel opposed the Motion to Impose Suspended Fine, stating, in relevant part:

It appears that the sentence was suspended for six months[ ] beginning September 12, 2001. The period of suspension expired on March 12, 2002 or there about [sic].

While there is no case law on point, it appears that the motion to impose a suspended sentence must be filed and perhaps heard within the period of suspension. HRS § 706–627 provides that the period of probation is tolled upon the filing of a motion to revoke or modify probation. Hence the period of probation would run but for the statute that tolls the running of the period while a motion to revoke is pending. Since there is no similar provision for a suspended sentence, it appears that the period of suspension can not [sic] be tolled and any motion must be heard during the period of suspension. Since the State's Motion to Imposed [sic] Suspended Fine was not filed until May 22, 2002, the period of suspension has already lapsed.

The district court [11] heard the State's motion on June 19, 2002. At the outset of the hearing, the district court noted:

No one has cited, ah, any case law to me. But I don't think this occasion would—this question of the time available in tolling has come up.

Ah, my favored impression—I recognize that there are two reasonable ways to approach this. My sense of it is the better argument is that the prosecution is entitled to wait and see if the person gets—in fact, arguably they have to wait and see if the person gets convicted.

In other words if, as we commonly do, we say, okay, no insurance, fined $500, $400 suspended six months, no further violations; five-and-a-half months later the person gets cited, they come to court, they ask for trial. Trial is not till months after, and the period—the six months has run. The citation is within the six months. My

---

9. Judge Schutte presided.

10. As of May 8, 2002, Brighter still owed $132 of the original $152 in imposed fines and fees.

11. Judge Choi presided.

best sense of it is that the—if the citation falls within the six months then it's covered.

Now maybe, if you have a situation where, for whatever reason, the charge is not actually brought a long time later and there's something about the fact pattern in that particular case which suggests that it's unfair, inappropriate, whatever, to hold the person to the suspended period—we've got cases where they don't get found years after the citation—maybe if we have one of those cases in the right situation the rule might be different. But my own position has been that if the prosecution occurs within a reasonable time after the citation that the best interpretation is that if the offense falls within the prohibited period, that you impose it.

Defense counsel then urged the court to apply the statutory rules governing probation revocation [12] to the revocation of Brighter's suspended sentence:

> I certainly see—I don't think there's any law on the point here. To me the closest reality would be if it's a probation-ish situation. It isn't probation, it's probation-ish. And in probation there's specifically a stat-ute that states that if you file a motion it tolls the running of probation.
>
> And in probation, if a person is on probation, they are charged with a new offense, it may not be decided until after probation is over whether the person did or didn't commit the new offense—

The district court, however, declined to do so:

> [T]here are a number of situations in the area of "traffic law," quote/unquote, where the rules are somewhat different in recognition of the realities of traffic situation and the administration of justice.
>
> The rules for Miranda warnings are different in traffic in recognition of the realities of the situation, I think. I don't think there's any other way to rationalize the difference in case law between what you can do in a traffic situation and asking questions versus nontraffic. And I would—again, just my sense of it is, that there's a distinction to be drawn between a criminal situation and traffic. And it may be arbitrary, but I think it's a recognition of reality.

The district court then granted the State's motion to impose Brighter's suspended fine of $1,400 for Citation 1.

---

12. The procedural requirements governing the revocation of probation are set forth in HRS §§ 706–625 (Supp.2003), 706–627 (1993), and 706–630 (Supp.2003). HRS § 706–630 provides, in relevant part, that "[u]pon the termination of the period of probation ..., the defendant shall be relieved of any obligations imposed by the order of the court and shall have satisfied the disposition of the court." HRS § 706–625 (Supp.2003). Pursuant to HRS § 706–625(1), "[t]he court, on application of a probation officer, the prosecuting attorney, the defendant, or on its own motion, after a hearing, may revoke probation ..., reduce or enlarge the conditions of a sentence of probation, pursuant to the provisions applicable to the initial setting of the conditions and the provisions of section 706–627." HRS § 706–625(1) (Supp.2003). HRS § 706–627(1) states, in part, that "[u]pon the filing of a motion to revoke a probation or a motion to enlarge the conditions imposed thereby, the period of probation shall be tolled pending the hearing upon the motion and the decision of the court." HRS § 706–627(1) (1993).

These procedural requirements at one time also governed the revocation of a suspended sentence. In 1985, the legislature amended HRS §§ 706–625 and 706–627 to specifically authorize the prosecuting attorney to apply for a revocation of the suspension of sentence or probation. 1985 Haw. Sess. L. Act 192, §§ 1, 2. Act 192 also added the following subsection (c) to HRS § 706–625:

> The court shall revoke the suspension of sentence or probation if the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order or has been convicted of a felony. The court may revoke the suspension of sentence or probation if the defendant has been convicted of another crime other than a felony.

1985 Haw. Sess. L. Act 192, § 1 at 327. Interestingly, the very next year, the legislature, as part of a major overhaul of the Hawaii Penal Code, deleted suspended sentences from the applicability of most of the Penal Code procedural requirements governing the revocation of probation and suspended sentences or the modification of conditions imposed as part of probation or a suspended sentence. *See, e.g.,* 1986 Haw. Sess. L. Act 314, §§ 20, 21, 24, 25, 26, 27, 28, 29, 30, 31, 32 at 603–09. There is no indication in the legislative history as to why suspended sentences were removed from these statutory provisions.

The district court's written order granting the State's Motion to Impose Suspended Fine was filed on July 15, 2002 and states, in pertinent part:

1. On September 12, 2001, [Brighter] received a sentence for a No–No Fault Insurance Citation [1], that included a portion of her fine being suspended for six months.

2. On December 28, 2001, within the six month period, [Brighter] was cited for another No Fault Insurance violation, under Citation [2].

3. [Brighter] plead to the new No Fault insurance charge on April 18, 2002, at which time the [c]ourt advised [Brighter] and counsel of the suspended fine, and defense counsel requested a written motion be filed. The case was continued to May 8, 2002, for consolidation of the old and new insurance cases and sentencing.

4. On May 8, 2002, the State advised defense that a Motion to Impose Suspended Fine would be filed. Defense noted [Brighter] had a new contempt on the payment calendar that still required referral to the public defender and the case was continued to June 19, 2002, for further proceedings on the contempt and sentencing on the insurance charge.

5. A motion to Impose Suspended fine was filed May 22, 2002.

Based on the foregoing, the [c]ourt concludes as a matter of law:

1. The law does not require the Motion to Impose a Suspended Sentence, where probation is not involved, to be filed or heard within the period of the suspension.

2. There may be a requirement that the suspended sentence be imposed in a reasonable time, and under the circumstances of this case, [Brighter] was given timely notice of the State's intent to ask for the suspension to be imposed.

The district court made no finding of fact or conclusion of law regarding whether Brighter received any notice of her obligation to remain free of any convictions during the suspension period.

A notice of appeal was timely filed on August 12, 2002.

## ISSUES ON APPEAL

Brighter raises two arguments on appeal: (1) The district court lacked jurisdiction to revoke Brighter's suspended fine for Citation 1 because the State failed to file a timely revocation motion within the six-month suspension period, and (2) the district court violated Brighter's right to due process when it revoked Brighter's suspended fine for violation of a condition about which Brighter was never informed.

## STANDARDS OF REVIEW

■ A trial court's conclusions of law are subject to *de novo* review under the right/wrong standard. *State v. Ah Loo*, 94 Hawai'i 207, 209, 10 P.3d 728, 730 (2000). Likewise, a lower court's interpretation of a statute is reviewable *de novo*, as a question of law. *State v. Kotis*, 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999).

■ The grant or denial of a suspended sentence for an automobile insurance violation rests within the discretion of the trial court. HRS § 431:10C–117(a)(2)(B) (Supp. 2003). To constitute an abuse of discretion, "it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the party litigant." *State v. Crisostomo*, 94 Hawai'i 282, 287, 12 P.3d 873, 878 (2000) (citations and internal quotation marks and brackets omitted).

## DISCUSSION

A. *The District Court Lacked Jurisdiction to Revoke Brighter's Suspended Sentence*

■ Brighter's sentence for Citation 1 was apparently suspended by the district court

pursuant to HRS § 431:10C–117(a)(2)(B)(i), which vests discretion in the court "to suspend all or any portion of the fine *if the defendant provides proof of having a current motor vehicle insurance policy* [.]" HRS § 431:10C–117(a)(2)(B)(i) (emphasis added). There are no conditions set forth in HRS § 431:10C–117(a)(2) or HRS chapter 431:10C (governing motor vehicle insurance) with which a defendant must comply during a period of sentence suspension. Additionally, HRS § 431:10C–117(a)(2) is silent as to whether a court that has exercised its discretion to suspend all or part of a fine is allowed to subsequently revoke the suspension of a fine.

In *State v. Eline*, 70 Haw. 597, 778 P.2d 716 (1989), the Hawai'i Supreme Court construed HRS § 706–605(3) [ (Supp.1987) ], which is part of the Hawaii Penal Code and authorizes a court to "sentence a person convicted of a misdemeanor or petty misdemeanor to a suspended sentence[,]" as rendering

> it obligatory on the court choosing the dispositional alternative of a suspended sentence to impose a sentence and suspend its execution on condition that the defendant does not commit another offense during the term of suspension. Otherwise, the sentence would neither provide punishment nor afford deterrence.

*Eline*, 70 Haw. at 602–03, 778 P.2d at 720. The supreme court also stated:

> But we do not read HRS § 706–605(3) as permitting the attachment of other conditions to a suspended sentence. If the subsection is construed to permit the imposition of other conditions, a suspended sentence would be well nigh indistinguishable from probation. Yet each is a distinct alternative in the Penal Code's sentencing scheme. To begin with, defendants convicted of felonies, misdemeanors, and petty misdemeanors can be placed on probation, but only those convicted of misdemeanors and petty misdemeanors can have their sentences suspended. And as we noted, probation may be combined with fine, imprisonment, restitution, or community ser-

vice as a sentencing alternative, but there is no provision in HRS § 706–605(3) authorizing the combination of a suspended sentence with any other alternative. If the sentencing court believes a suspended sentence does not "provide just punishment for the offense" and "afford adequate deterrence to criminal conduct" without other conditions, it should place the convicted offender on probation.

*Eline*, 70 Haw. at 603, 778 P.2d at 720 (citations omitted). The *Eline* court, "[h]aving decided that a suspended sentence may only be conditioned upon the offender's remaining free of further convictions," *id.*, then went on to discuss the due process protections that must be afforded to a defendant when the State seeks to revoke that defendant's suspended sentence:

> A proceeding whereby the State seeks to revoke a suspended sentence "is not part of a criminal prosecution and thus the full panoply of rights due a defendant there does not apply" to the revocation. A "simple factual hearing" should suffice *whether the State moves to terminate the convicted offender's liberty before the term of suspension expires or whether the sentencing court schedules his [or her] case for "proof of compliance" near the end of the term.*
>
> *A suspended sentence being revocable upon a showing of another conviction, nothing more than the introduction of a properly authenticated copy of a judgment of conviction would be required for revocation.* And if the judgment of conviction was entered in the court itself, "the practice of taking judicial notice of a court's own records in an interrelated proceeding where the parties are the same" has been validated.

*Id.* at 604, 778 P.2d at 720 (emphasis added; citations and internal brackets omitted).

Brighter contends that because HRS chapter 431:10C is silent as to the procedural requirements for revoking a suspended fine imposed pursuant to HRS § 431:10C–117(a)(2), any ambiguities in process should be resolved by applying the procedures for

revoking probation that are set forth in HRS §§ 706–625 (Supp.2003), 706–627 (1993), and 706–630 (Supp.2003). Brighter further argues that because the State failed to file a motion to revoke her suspended fine within the six-month suspension period, as required by HRS § 706–625, her suspended sentence was not tolled and, accordingly, she was discharged from any obligations imposed by the suspended sentence once the six-month suspended sentence period had expired.

The State counters that "[i]t is fundamentally unfair to the State and contravenes the purpose of the legislation to require a motion to impose suspended sentence on a no-fault charge to be filed within the suspension period, where the triggering citation is within the six-month period and the conviction is delayed at least in part due to [Brighter's] request." The State also argues:

The [district court] had inherent authority to impose the suspended sentence on Brighter once the triggering offense appeared on the calendar as having occurred within the six-month period. The authority did not dissipate simply because no motion was filed within that period. In point of fact, no motion was required but one was ultimately filed, in part because defense counsel requested it. Likewise imposition of sentencing, including the suspended sentence, was delayed due to defense's requests, so that Brighter might present proof of current insurance.

On a practical note, it is clear from the record and from a moment's thought, that there is an inevitable delay between the date of the person receiving the citation and the date when that ticket will show up on a district court calendar.

If a motion is required to impose the suspended sentence, and the motion has to be filed within the six-month period, then the State would be required to obtain a traffic abstract on every person who receives a citation immediately upon the citation being issued. Then, in those instances where the six-month suspension expires prior to the initial court date, the State would be required to rush forward with a motion to impose suspended sentence even before the return date on the ticket.

As a matter of common sense, that scenario simply cannot work: too many tickets, too little time.

1.

Pursuant to HRS § 706–625(3):

The court shall revoke probation if the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition of the order or has been convicted of a felony. *The court may revoke the suspension of sentence* or probation *if the defendant has been convicted of another crime other than a felony.*

HRS § 706–625(3) (emphasis added). The foregoing statute, if applied in this case, clearly authorized the district court to revoke Brighter's suspended fine upon Brighter's *conviction* of the charge in Citation 2. However, unlike the revocation of probation which is governed by specific statutes, existing statutes are silent as to the process for revoking a suspended sentence. Therefore, no statutory guidance exists to determine (1) whether a proceeding to revoke a suspended sentence may be filed after the suspension period has expired, and (2) whether conviction of a non-felony crime must occur within the suspension period in order to trigger the court's authority to revoke the suspended sentence. Brighter urges us to apply the statutes governing the revocation of probation to suspended sentences and require that motions to revoke a suspended sentence be filed during the suspension period. However, inasmuch as these statutes were once applicable to suspended sentences but were amended by the legislature to make them inapplicable to suspended sentences, we are not inclined to do so.

2.

In other jurisdictions without statutes governing the revocation of probation, the case law on the issue of whether revocation must

occur within the probation period has been mixed. An annotation on the subject summarizes the case law as follows:

It is well established that trial courts have authority to revoke probation during the period of probation set by the order of the trial court for material violations of the conditions imposed by the probation order. However, where the revocation proceedings are not begun until after the expiration of the probation term, or are begun prior to expiration but continue beyond that point, questions arise as to the trial court's authority to issue a revocation order.

Some jurisdictions follow the general rule that the trial court retains authority to revoke probation for a reasonable amount of time after the probation term has expired (§ 3, infra), with the extent of the delay in bringing or completing proceedings being considered with all other circumstances in deciding whether the delay was reasonable (§ 4, infra) or unreasonable (§ 5, infra).

Other jurisdictions adhere to the general rule that the institution of revocation proceedings during the term of probation operates to provide the trial court with authority to hold revocation proceedings and issue the revocation order after the expiration of the term (§ 6, infra). Within the general rule, there is disagreement as to the minimum action necessary to institute proceedings, with authority existing for the proposition that revocation proceedings may be commenced by the filing of a petition or motion to revoke (§ 7, infra), by the issuance of a warrant for the defendant's arrest (§ 8, infra), by the issuance of a warrant plus execution of the warrant within a reasonable time of its issuance (§ 9, infra), by the filing of a petition or motion to revoke followed by the issuance of a warrant (§ 10, infra), and by the personal appearance of the defendant (§ 11, infra).

Still other jurisdictions follow the general rule that revocation proceedings must be completed prior to the expiration of the probation term (§ 12, infra). Within the general rule there is disagreement as to whether the imposition of sentence is part of the revocation proceeding, some courts holding that sentence must be imposed prior to the expiration of the probation term (§ 13, infra) and other courts holding that issuance of a valid revocation order prior to the expiration of the term gives the trial court authority to impose sentence after the probation term has expired (§ 14, infra).

Lee R. Russ, Annotation, *Power of Court, After Expiration of Probation Term, to Revoke or Modify Probation for Violations Committed During the Probation Term,* 13 A.L.R.4th 1240 § 2(a) (1982).

■ In *Eline,* the Hawai'i Supreme Court stated that

[a] proceeding whereby the State seeks to revoke a suspended sentence "is not part of a criminal prosecution and thus the full panoply of rights due a defendant there does not apply" to the revocation. A "simple factual hearing" should suffice *whether the State moves to terminate the convicted offender's liberty before the term of suspension expires or whether the sentencing court schedules his [or her] case for "proof of compliance" near the end of the term.*

A suspended sentence being revocable upon a showing of another *conviction,* nothing more than the introduction of a properly authenticated copy of a judgment of conviction would be required for revocation. And if the judgment of conviction was entered in the court itself, "the practice of taking judicial notice of a court's own records in an interrelated proceeding where the parties are the same" has been validated.

70 Haw. at 604, 778 P.2d at 720 (emphases added; citations and internal brackets omitted). Although the *Eline* court was construing HRS § 706–625(3), which vests discretion in a court to revoke the suspension of sentence ... if the defendant has been convicted

of another crime other than a felony[,]" it appears, based on the *Eline* language, that the supreme court shares Brighter's view that termination of the suspended sentence must occur before the expiration of the suspended sentence period. Moreover, proof of a judgment of another conviction is required to terminate a suspended sentence. *Id.*

■ In this case, the State, despite knowledge that Brighter had been arrested for another no-motor-vehicle-insurance charge, did not move to revoke her suspended sentence within the suspended sentence period. Additionally, Brighter was not convicted of the Citation 2 charge until after the suspended sentence period for Citation 1 had already expired. We conclude, therefore, that when the district court revoked Brighter's suspended sentence, it lacked authority to do so.

B. *Brighter's Due Process Rights Were Not Violated When the District Court Revoked Brighter's Suspended Sentence for Violating a Condition About Which Brighter Was Never Informed*

■ The Fifth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that no person shall be deprived "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Article I, section V of the Hawai'i Constitution similarly provides that "[n]o person shall be deprived of life, liberty or property without due process of law[.]" Haw. Const. art. I, § 5.

In this case, it is undisputed that the district court did not inform Brighter that her suspended fine would be revoked if she committed a new crime. Brighter contends that the district court's revocation, "based on the non-existent condition to remain conviction free, and without notice to Brighter constitutes a clear denial of due process." Although our conclusion that the district court lacked authority to impose Brighter's suspended sentence is dispositive of this appeal, we will nevertheless address Brighter's second point on appeal for the district court's guidance in future cases.

Courts in other jurisdictions that have considered this issue have generally concluded that due process does not require advance notice to a defendant of the requirement to remain conviction free while serving a suspended sentence.

In *State v. Lewis,* 752 A.2d 1144, 58 Conn. App. 153 (2000), for example, a defendant was arrested for robbery in the first degree three weeks after he was placed on probation and his sentence to five years in prison was suspended. The defendant's probation was thereafter revoked and the defendant was committed to the custody of the commissioner of correction to serve the suspended portion of his sentence, despite argument by the defendant that he had not been told that commission of a felony while on probation would constitute a violation of probation. On appeal, the defendant argued that his due process rights were violated by the insufficient notice. Rejecting the defendant's argument, the Appellate Court of Connecticut held:

Due process does not require that the defendant, in a revocation of probation proceeding based on criminal activity, be aware of the conditions of probation. "In such a case, knowledge of the criminal law is imputed to the probationer, as is an understanding that violation of the law will lead to the revocation of probation. On the other hand, where the proscribed acts are not criminal, due process mandates that the defendant cannot be subject to a forfeiture of his [or her] liberty for those acts unless he [or she] is given prior fair warning." *United States v. Dane,* 570 F.2d 840, 844 (9th Cir.1977), cert. denied, 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124 (1978). An inherent condition of any probation is that the probationer not commit further violations of the criminal law while on probation. "It is universally held that the commission of a felony violates a condition inherent in every probation order." *State v. Roberson,* 165 Conn. 73, 77, 327 A.2d 556 (1973). The general conditions of probation are presumed as an integral part of probation. *State v.*

*Wright,* [24 Conn.App. 575, 577, 590 A.2d 486 (1991) ].

. . . .

Had the sentencing court merely placed the defendant on probation without saying anything further, the commission of a felony nevertheless would constitute a violation sufficient to authorize revocation of probation. *State v. Hoffler,* 55 Conn.App. 210, 216–17, 738 A.2d 1145, cert. denied, 251 Conn. 923, 742 A.2d 360 (1999). The defendant was not entitled to "fair warning" that committing new crimes is a violation of probation. *Id.,* at 217, 738 A.2d 1145. We conclude, therefore, that the defendant's due process rights were not violated and that the court did not abuse its discretion in finding the defendant in violation of his probation.

*Id.* at 1146–47 (footnote and internal brackets omitted).

In *Brooks v. State,* 484 P.2d 1333 (Okla. Crim.App.1971), the defendant's four-year suspended sentence for larceny of an automobile was revoked after the defendant was found guilty of assault with a deadly weapon with intent to kill, after former conviction of a felony. The defendant appealed, arguing that the revocation of suspended sentence was improper because the judgment and sentence for the larceny offense "did not state any court-imposed conditions of the suspension[.]" Disagreeing, the Oklahoma Court of Criminal Appeals held:

We are of the opinion that a condition of a suspended sentence that a person may not commit a felony, is so basic and fundamental that any reasonable person would be aware of such condition. To allow a defendant to escape revocation under such circumstances would be mockery of our whole system of criminal justice.

484 P.2d at 1334.

In *State v. Budgett,* 146 N.H. 135, 769 A.2d 351 (2001), the Supreme Court of New Hampshire summarized the relevant case law, as follows:

In *Stapleford v. Perrin,* 122 N.H. 1083, 1087, 453 A.2d 1304 (1982), we set forth the principle that:

At the conclusion of the sentencing proceeding, a defendant and the society which brought him [or her] to court must know in plain and certain terms what punishment has been exacted by the court as well as the extent to which the court retained discretion to impose punishment at a later date and under what conditions the sentence may be modified.

In accordance with due process, "the sentencing order must clearly communicate to the defendant the exact nature of the sentence." *State v. Burgess,* 141 N.H. 51, 52, 677 A.2d 142 (1996) (quotation omitted). We have recognized "that termination of freedom by revocation of a suspended sentence involves constitutional liberty interests" protected by the Due Process Clause. *Brennan v. Cunningham,* 126 N.H. 600, 604, 493 A.2d 1213 (1985). Our inquiry therefore focuses on whether an implied condition of good behavior is constitutionally permissible under due process, and if so, whether the defendant violated that condition.

The State's argument relies upon earlier cases that appear to recognize an implied condition of good behavior in suspended sentences. *See Couture v. Brown,* 82 N.H. 459, 461, 135 A. 530 (1926); *Stone v. Shea,* 113 N.H. 174, 176, 304 A.2d 647 (1973). The defendant, however, relying upon *State v. Ingerson,* 130 N.H. 112, 536 A.2d 161 (1987), and other cases decided since *Stapleford,* argues that *Couture* and *Stone* are not controlling because we have subsequently expressed disapproval of implicit sentencing conditions.

At first glance, it would appear that any implied condition would violate due process since "an essential component of due process is that individuals be given fair warning of those acts which may lead to a loss of liberty." *Grajczyk v. S.D. Bd. of Pardons,* 603 N.W.2d 508, 512 (S.D.1999). As the State correctly points out, however, "the overwhelming weight of authority is that a fundamental condition of any suspended sentence or probation, whether ex-

pressly stated or not, is that the defendant shall not violate the law." *State v. Holter,* 340 N.W.2d 691, 693 (S.D.1983); *see also, e.g., United States v. Dane,* 570 F.2d 840, 843–44 (9th Cir.1977), *cert. denied,* 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124 (1978); *United States v. Cardenas-Yanez,* 741 F.Supp. 212, 214 (S.D.Fla.1990); *State v. Hancock,* 111 Idaho 835, 727 P.2d 1263, 1266 (App.1986); *Wilcox v. State,* 395 So.2d 1054, 1056 (Ala.1981); *Brooks v. State,* 484 P.2d 1333, 1334 (Okla.Crim.App. 1971).

It would be illogical and unreasonable to conclude that a defendant, who has been granted conditional liberty, needs to be given an express warning that if he [or she] commits a crime, he [or she] will lose the privilege of that liberty. "A condition of a suspended sentence that a person may not commit a crime, is so basic and fundamental that any reasonable person would be aware of such condition." *Brooks,* 484 P.2d at 1334. Accordingly, we hold that there is an implied condition of good behavior in suspended sentences and that this condition does not offend due process.

When the deprivation of the defendant's conditional liberty rests upon the commission of a non-criminal act, however, he [or she] must be given some form of warning in order to ensure that he [or she] understands, "in plain and certain terms," the conditions of his [or her] sentence. *Stapleford,* 122 N.H. at 1087, 453 A.2d 1304. "Due process mandates that he [or she] be given actual notice" that such conduct could result in the revocation of his [or her] conditional liberty. *Mace v. Amestoy,* 765 F.Supp. 847, 849 (D.Vt.1991) (citation omitted); *see also United States v. Gallo,* 20 F.3d 7, 12 (1st Cir.1994). To hold otherwise would effectively modify the terms of the original sentencing order and result in fundamental unfairness. *See State v. Rau,* 129 N.H. 126, 129, 523 A.2d 98 (1987).

We conclude, therefore, as do a majority of other jurisdictions, that the term "good behavior" is defined as conduct conforming to the law. It does not include non-crimi-

nal behavior for which the defendant must be given actual notice. *See Horsey v. State,* 56 Md.App. 667, 468 A.2d 684, 687 (1983); *State v. Columbo,* 366 A.2d 852, 854 (Me.1976); *State v. Miller,* 28 N.C.App. 504, 221 S.E.2d 520, 521 (1976) 21A Am.Jur.2d *Criminal Law* § 897 (1998); Annotation, *What Constitutes "Good Behavior" Within Statute or Judicial Order Expressly Conditioning Suspension of Sentence Thereon,* 58 A.L.R.3d 1156, 1162 (1974).

769 A.2d at 353–54 (internal brackets omitted).

In *Robinson v. Leapley,* 515 N.W.2d 216 (S.D.1994), the defendant petitioned for habeas corpus relief after the suspended portion of his prison sentence for escape was revoked by the Board of Pardons and Paroles for failure to comply with a condition of the defendant's parole agreement, namely failure to keep his parole agent advised of his whereabouts. The South Dakota Supreme Court reversed the revocation on due process grounds:

> It is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty. This is no less true whether the loss of liberty arises from a criminal conviction or the revocation of probation.

> As a general matter, formal conditions of probation serve the purpose of giving notice of proscribed activities. But a formal condition is not essential for purposes of notice. Courts have sustained the revocation of probation for criminal activity committed prior to the effective date of the conditions, or where the defendant was not aware of the conditions. In such a case, knowledge of the criminal law is imputed to the probationer, as is an understanding that violation of the law will lead to the revocation of probation. On the other hand, where the proscribed acts are not criminal, due process mandates that the petitioner cannot be subjected to a forfeiture of his [or her] liberty for those acts unless he

[or she] is given prior fair warning. Of course, where the warning is not contained in a formal condition, the record must be closely scrutinized to determine whether the defendant did, in fact, receive the requisite warning. (citations and footnote omitted).

While a probationer's failure to keep his [or her] parole agent advised of his [or her] whereabouts might well be a necessary and fundamental condition of any suspended sentence, State cites no authority that such a failure constitutes criminal activity. Thus, unless the probationer receives prior fair warning that failure to keep his [or her] parole agent advised of his [or her] whereabouts can lead to revocation of his [or her] suspended sentence, the Board of Pardons and Paroles' decision to revoke violates the requirements of due process.

*Id.* at 218–19 (citations omitted).

In *State v. Stubblefield,* 953 S.W.2d 223 (Tenn.Cr.App.1997), the Tennessee Court of Criminal Appeals was confronted with a similar issue: Whether a trial court had authority to revoke a defendant's probation based on offenses that the defendant committed before he or she was convicted but which the trial court did not learn of until after the conviction. In concluding that probation could be revoked, the court stated:

We recognize that a defendant who is granted probation has a liberty interest that is protected by due process of law. Also, it is fundamental to our system of justice through due process that persons who are to suffer penal sanctions must have reasonable notice of the conduct that is prohibited. In this vein, a trial court would usually be unable to revoke a defendant's suspended sentence based on violations of probation conditions before those conditions are set.

However, revoking probation based upon criminal acts a defendant committed before being placed on probation does not implicate these due process concerns because, unlike other conditions of probation that may be imposed, the defendant is deemed to have notice that his or her conduct must conform to the requirements of the law from the time of the law's enactment.... Similarly, ... a defendant's criminal conduct after arrest that is not disclosed to the trial court at the time of the grant of probation need not go unnoticed for revocation purposes.

953 S.W.2d at 225 (citations omitted).

In *Eline,* the Hawai'i Supreme Court held that although the suspended sentencing provisions of the Hawaii Penal Code did not specifically authorize a sentencing court to attach conditions to the suspension of a sentence, it was nevertheless "obligatory on the court choosing the dispositional alternative of a suspended sentence to impose a sentence and suspend its execution on condition that the defendant does not commit another offense during the term of suspension. Otherwise, the sentence would neither provide punishment nor afford deterrence." *Eline,* 70 Haw. at 602–03, 778 P.2d 720. The supreme court thus implied that a defendant whose sentence is suspended must be on notice that any criminal activity on his or her part may lead to revocation of his or her suspended sentence.

In this case, Brighter, having been previously convicted of driving without motor vehicle insurance, was clearly on notice that driving without motor vehicle insurance was a criminal offense. We conclude that revocation of Brighter's suspended sentence for commission of the same offense during the period of suspension would not implicate Brighter's due process rights.

## CONCLUSION

Because the district court lacked authority to impose Brighter's suspended sentence once the suspension period expired, we reverse the district court's July 15, 2002 Order Granting State's Motion to Impose Suspended Fine.

*Concurring Opinion by FOLEY, J.*

I concur. As discussed in the majority opinion, the State's motion to impose a suspended fine was untimely. Because the district court lacked authority to revoke Brighter's suspended sentence, Brighter's due process claim need not be addressed.