Rockingham
No. 99-028

## THE STATE OF NEW HAMPSHIRE

v.

## JOSHUA BUDGETT

March 16, 2001

*Philip T. McLaughlin*, attorney general (*Janice K. Rundles*, senior assistant attorney general, on the brief, and *Ann M. Rice*, senior assistant attorney general, orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

GROFF, J., superior court justice, specially assigned under RSA 490:3. The defendant, Joshua Budgett, appeals an order of the Superior Court (*Coffey*, J.) revoking his suspended sentence. We reverse and remand.

The record supports the following facts. On January 12, 1994, the defendant pleaded guilty to two counts of aggravated felonious sexual assault, *see* RSA 632-A:2 (1996), and was sentenced to two concurrent terms of four to eight years in the New Hampshire State Prison. The trial court ordered that "[a]ll of the minimum sentence may be suspended by the Court on application of the defendant provided he demonstrates successful completion of a sexual offender program while incarcerated."

After the defendant successfully completed sex offender counseling, the trial court suspended the remainder of his minimum sentence "on the condition that, in the event of parole, the defendant

not reside in the victim's neighborhood." The defendant was paroled on September 23, 1996. In September 1998, his parole was revoked after he violated the terms of his community sexual offender treatment contract. Subsequently, the State moved to impose the defendant's suspended sentence.

At the hearing to impose the suspended sentence, the State argued that, while the trial court's order listed only one express condition, which the defendant did not violate, the suspended sentence was also subject to an implied condition of good behavior. On December 9, 1998, the trial court revoked the defendant's suspended sentence and imposed the balance of the minimum term of that sentence. This appeal followed.

On appeal, the defendant argues that the trial court erred in revoking his suspended sentence because he did not violate the express condition set forth in the sentencing order. He further contends that implicit sentencing conditions, such as good behavior, are not in accord with prior decisions of this court and that due process mandates that sentencing orders be clear and unambiguous. Finally, the defendant asserts that even if there is an implied sentencing condition of good behavior, he did not violate the condition because "good behavior" is defined as conduct conforming to the law and, here, there was no claim that the defendant violated the law.

We address the defendant's State constitutional claims first, referencing federal case law only as an analytical aid. *See State v. Ball*, 124 N.H. 226, 232 (1983). Because the Federal Constitution provides no greater protection than our State Constitution, we will not conduct a separate federal analysis. *See Knowles v. Warden, N.H. State Prison*, 140 N.H. 387, 389 (1995).

 In *Stapleford v. Perrin*, 122 N.H. 1083, 1087 (1982), we set forth the principle that:

> At the conclusion of the sentencing proceeding, a defendant and the society which brought him to court must know in plain and certain terms what punishment has been exacted by the court as well as the extent to which the court retained discretion to impose punishment at a later date and under what conditions the sentence may be modified.

In accordance with due process, "[t]he sentencing order must clearly communicate to the defendant the exact nature of [the] sentence." *State v. Burgess*, 141 N.H. 51, 52 (1996) (quotation omitted). We have recognized "that termination of freedom by

revocation of a suspended sentence involves constitutional liberty interests" protected by the Due Process Clause. *Brennan v. Cunningham*, 126 N.H. 600, 604 (1985). Our inquiry therefore focuses on whether an implied condition of good behavior is constitutionally permissible under due process, and if so, whether the defendant violated that condition.

The State's argument relies upon earlier cases that appear to recognize an implied condition of good behavior in suspended sentences. *See Couture v. Brown*, 82 N.H. 459, 461 (1926); *Stone v. Shea*, 113 N.H. 174, 176 (1973). The defendant, however, relying upon *State v. Ingerson*, 130 N.H. 112 (1987), and other cases decided since *Stapleford*, argues that *Couture* and *Stone* are not controlling because we have subsequently expressed disapproval of implicit sentencing conditions.

At first glance, it would appear that any implied condition would violate due process since "an essential component of due process [is] that individuals be given fair warning of those acts which may lead to a loss of liberty." *Grajczyk v. S.D. Bd. of Pardons*, 603 N.W.2d 508, 512 (S.D. 1999). As the State correctly points out, however, "the overwhelming weight of authority is that a fundamental condition of any suspended sentence or probation, whether expressly stated or not, is that the defendant shall not violate the law." *State v. Holter*, 340 N.W.2d 691, 693 (S.D. 1983); *see also, e.g., United States v. Dane*, 570 F.2d 840, 843-44 (9th Cir. 1977), *cert. denied*, 436 U.S. 959 (1978); *United States v. Cardenas-Yanez*, 741 F. Supp. 212, 214 (S.D. Fla. 1990); *State v. Hancock*, 727 P.2d 1263, 1266 (Idaho App. 1986); *Wilcox v. State*, 395 So. 2d 1054, 1056 (Ala. 1981); *Brooks v. State*, 484 P.2d 1333, 1334 (Okl. Crim. App. 1971).

█ It would be illogical and unreasonable to conclude that a defendant, who has been granted conditional liberty, needs to be given an express warning that if he commits a crime, he will lose the privilege of that liberty. "[A] condition of a suspended sentence that a person may not commit a [crime], is so basic and fundamental that any reasonable person would be aware of such condition." *Brooks*, 484 P.2d at 1334. Accordingly, we hold that there is an implied condition of good behavior in suspended sentences and that this condition does not offend due process.

█ When the deprivation of the defendant's conditional liberty rests upon the commission of a non-criminal act, however, he must be given some form of warning in order to ensure that he understands, "in plain and certain terms," the conditions of his sentence. *Stapleford*, 122 N.H. at 1087. "[D]ue process mandates

[that he be given] actual notice" that such conduct could result in the revocation of his conditional liberty. *Mace v. Amestoy*, 765 F. Supp. 847, 849 (D. Vt. 1991) (citation omitted); *see also United States v. Gallo*, 20 F.3d 7, 12 (1st Cir. 1994). To hold otherwise would effectively modify the terms of the original sentencing order and result in fundamental unfairness. *See State v. Rau*, 129 N.H. 126, 129 (1987).

■ We conclude, therefore, as do a majority of other jurisdictions, that the term "good behavior" is defined as conduct conforming to the law. It does not include non-criminal behavior for which the defendant must be given actual notice. *See Horsey v. State*, 468 A.2d 684, 687 (Md. App. 1983); *State v. Columbo*, 366 A.2d 852, 854 (Me. 1976); *State v. Miller*, 221 S.E.2d 520, 521 (N.C. App. 1976); 21A AM. JUR. 2D *Criminal Law* § 897 (1998); Annotation, *What Constitutes "Good Behavior" Within Statute or Judicial Order Expressly Conditioning Suspension of Sentence Thereon*, 58 A.L.R.3d 1156, 1162 (1974).

■ We also conclude that the trial court erred in revoking the defendant's suspended sentence. The defendant violated a condition of parole. Specifically, he violated the terms of his community sexual offender treatment contract. The order suspending the defendant's sentence, however, had one expressed condition, that he not reside in the victim's neighborhood. There is no allegation that the defendant violated this condition, or that his conduct otherwise constituted a violation of the law.

The State argues that under the circumstances of this case, an expressed condition was not necessary because the defendant had sufficient notice that his conduct could lead to a revocation of his suspended sentence. We disagree. It would be unreasonable to expect the defendant to understand that a violation of his parole conditions, which were not promulgated until after the trial court suspended his sentence, could also result in the imposition of his suspended sentence. To accept this argument would undermine the strength of our Due Process Clause, which is designed to protect against precisely such lack of notice.

The State is not rendered powerless to protect society from a defendant's future misconduct. The State is free to request at the time of sentencing that certain conditions be attached to a suspension of that sentence, and the court may tailor those conditions to prevent re-offending and to further rehabilitation. While we realize that it may be difficult to enumerate all foreseeable non-criminal conduct which may trigger the imposition of a suspended sentence,

the defendant's due process rights require the trial court to undertake that effort.

*Reversed and remanded.*

BRODERICK, NADEAU and DALIANIS, JJ., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.