IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 7, 2018 Session

## STATE OF TENNESSEE v. WESTLEY A. ALBRIGHT

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Dickson County
No. 22CC-2013-CR-206      David D. Wolfe, Judge**

### No. M2016-01217-SC-R11-CD

The Defendant, Westley A. Albright, pled nolo contendere to one count of solicitation of a minor, a Class E felony, and was placed on judicial diversion, with a one-year probationary term. As part of his plea-agreement, the Defendant was required to register as a sex offender and to participate in sex offender treatment. After the Defendant was discharged from his treatment program for noncompliance, the Defendant's probation officer filed a Diversion Violation Report. Following a hearing, the trial court revoked the Defendant's diversion, adjudicated the Defendant guilty, extended the Defendant's probation by six months, and ordered the Defendant to attend and complete sex offender therapy. The Defendant appealed, and the Court of Criminal Appeals affirmed. We granted the Defendant's application for permission to appeal in order to determine whether the Defendant's due process rights were violated because he was not specifically informed in conjunction with his nolo contendere plea that his judicial diversion could be revoked if he refused to admit certain facts during his sex offender treatment. We hold that due process does not require a sex offender placed on judicial diversion with a probationary period to be informed specifically in conjunction with his plea that his judicial diversion and probation may be revoked if he is discharged from sex offender treatment due to his refusal to acknowledge that he committed the elements of the offense to which he pled. Accordingly, we affirm the courts below.

**Tenn. R. App. P. 11 Appeal by Permission;
Judgment of the Court of Criminal Appeals Affirmed**

JEFFREY S. BIVINS, C.J., delivered the opinion of the Court, in which CORNELIA A. CLARK, HOLLY KIRBY, and ROGER A. PAGE, JJ., joined. SHARON G. LEE, J., filed a dissenting opinion.

Timothy V. Potter and Andrew E. Mills, Dickson, Tennessee, for the appellant, Westley A. Albright.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Brent C. Cherry, Senior Counsel; Dan M. Alsobrooks, District Attorney General; and Sarah Wojnarowski, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

## Factual and Procedural Background

In February 2013, an undercover officer swore out an affidavit of complaint alleging that he had been communicating with the Defendant over the Internet for approximately two months. The officer alleged that the Defendant believed the officer was a mother with a thirteen-year-old daughter and that the Defendant "expressed many times that he wanted to have sex with both." The officer also alleged that the Defendant had requested that he be sent naked photographs of the mother and daughter via email. According to the affidavit, the officer set up a meeting and, when the Defendant showed up as arranged, the Defendant admitted to their communications. The officer also stated that the Defendant claimed that he was at the meeting only to get the mother's license plate number.

On the basis of this affidavit, the Defendant was arrested and subsequently indicted on two counts of solicitation of a minor. The Defendant entered into a plea-agreement with the State and, in September 2015, pled nolo contendere to one count of solicitation of a minor, a Class E felony.[1] The other count was dismissed. In conjunction

---

[1] The crime to which the Defendant pled is defined as follows:

(a) It is an offense for a person eighteen (18) years of age or older, by means of oral, written or electronic communication, electronic mail or Internet services, directly or through another, to intentionally command, request, hire, persuade, invite or attempt to induce a person whom the person making the solicitation knows, or should know, is less than eighteen (18) years of age, or solicits a law enforcement officer posing as a minor, and whom the person making the solicitation reasonably believes to be less than eighteen (18) years of age, to engage in conduct that, if completed, would constitute a violation by the soliciting adult of one (1) or more of the following offenses:

(1) Rape of a child, pursuant to § 39-13-522;

(2) Aggravated rape, pursuant to § 39-13-502;

(3) Rape, pursuant to § 39-13-503;

(4) Aggravated sexual battery, pursuant to § 39-13-504;

(5) Sexual battery by an authority figure, pursuant to § 39-13-527;

2

with his plea, the Defendant signed a written plea document providing, "I understand that if I plead NOLO CONTENDERE the court will find me guilty pursuant to the plea agreement set forth above." The Defendant was placed on judicial diversion,[2] with a probation term of one year, including the requirements that he register as a sex offender and that he "abide by the Specialized Probation Conditions for Sex Offenders as adopted by the Tennessee Department of Correction." The specialized conditions included the following:

> 3. I will attend, participate in, and pay for treatment or counseling with an approved treatment provider as deemed necessary by the Board, the Court, or my [Probation] Officer. I will continue in such treatment as instructed for the duration of supervision unless my treatment provider, in consultation with my Officer, instructs me in writing that I have satisfactorily completed treatment.

On the same day as his plea hearing, the Defendant signed the documents reflecting the conditions of his probation, and, additionally, wrote his initials next to each of the specialized probation conditions.

---

(6) Sexual battery, pursuant to § 39-13-505;

(7) Statutory rape, pursuant to § 39-13-506;

(8) Especially aggravated sexual exploitation of a minor, pursuant to § 39-17-1005;

(9) Sexual activity involving a minor, pursuant to § 39-13-529;

(10) Trafficking for commercial sex acts, pursuant to § 39-13-309;

(11) Patronizing prostitution, pursuant to § 39-13-514;

(12) Promoting prostitution, pursuant to § 39-13-515; or

(13) Aggravated sexual exploitation of a minor, pursuant to § 39-17-1004.

Tenn. Code Ann. § 39-13-528(a) (2014).

[2] Pursuant to Tennessee Code Annotated section 40-35-313(a)(1)(A) (2014), a trial court "may defer further proceedings against a qualified defendant and place the defendant on probation upon such reasonable conditions as it may require without entering a judgment of guilty[.]" We refer to this "unique legislative construct" as "judicial diversion." State v. Dycus, 456 S.W.3d 918, 925 (Tenn. 2015). When a defendant violates the terms of his judicial diversion probation, the trial court may revoke the defendant's diversion, enter an adjudication of guilt, "and proceed as otherwise provided." Tenn. Code Ann. § 40-35-313(a)(2).

The Defendant began his participation in the mandated sex offender treatment program with an assessment in November 2015. The Defendant then began attending group therapy sessions. According to the Defendant's therapist, James Berry Welch, the Defendant "attended all of his scheduled treatment groups." On January 6, 2016, the Defendant and Mr. Welch worked out a written treatment plan which the Defendant signed ("the Treatment Plan"). The Treatment Plan included as an objective that the Defendant "admit to 100 percent elements of the offense as described by his victims through the official victims' statement."

In spite of this objective agreed to by the Defendant, the Defendant continued to maintain during therapy that he had harbored no criminal intent during his communications with the undercover officer. According to Mr. Welch, the Defendant claimed that his reason for meeting the woman with whom he believed he was communicating

> was he had been stalked by somebody, a friend. Somebody had told him about the website, Motherless.com, which is a notorious website for incest. He went on that website and was looking for people who he thought was this woman who was stalking him in order to gain enough information to confront her on that. And he met with the police officer so that—or he went to meet with the police officer and agreed to meet with the police officer so he could get a license plate number off the vehicle to turn that over to authorities because of this person stalking him.

Mr. Welch discharged the Defendant from therapy for non-compliance on February 17, 2016. On February 19, 2016, the Defendant filed a motion seeking to be relieved from certain conditions of his probation, asserting that "a confession should not be a condition of [his] probation" and that he "does not wish for his probation to be violated merely because he has refused to admit facts which he asserts are not true."

The Defendant's probation officer, Jessica D. Forbes, filed a Diversion Violation Report on February 26, 2016. The factual basis for the alleged violation was that the Defendant "was discharged from sex offender specific treatment for noncompliance with treatment goals."

An evidentiary hearing ensued. Ms. Forbes testified that she filed the Violation Report after receiving a letter from the Defendant's treatment provider "indicating that [the Defendant] was no longer enrolled in treatment at that time" ("the Discharge Letter"). Although a copy of the Discharge Letter was admitted into evidence at the hearing, the record before this Court does not contain a copy of the letter.

Mr. Welch also testified, explaining that he discharged the Defendant from his therapy program because he failed to comply with his Treatment Plan, including the

4

necessity that the Defendant be "honest." Mr. Welch stated that, "[b]asically all of the evidence I had indicates that [the Defendant] had been lying to me."

Shown the Discharge Letter on cross-examination, Mr. Welch agreed with its statement that, "[a]though [the Defendant] appeared to be in compliance with supervision and attended all required treatment groups, he was not able to give a credible statement of responsibility for his offense of conviction." Mr. Welch explained that, although the Defendant had admitted to exchanging emails with the undercover officer and admitted to attending the meeting arranged by the undercover officer, the Defendant "was not credible in his intentions or his reason or rationale for why" he had participated in those activities. In short, the Defendant refused to admit in therapy that he had engaged in any conduct that included any illegal sexual behavior or intent. Mr. Welch explained that, if the Defendant refused to admit that he had engaged in soliciting a minor, then treatment aimed at remedying such behavior was pointless. Asked specifically on cross-examination, "that's why he was discharged from your program is because he wouldn't admit that he had a sex problem," Mr. Welch responded, "Yes."

After the hearing, the trial judge denied the Defendant's motion to be relieved from certain conditions of probation and found that the Defendant had violated the terms of his judicial diversion. The trial court's written order includes the following findings of fact:

> 4. The Defendant followed all directives and participated in the [approved treatment] program by attending all meetings and complying with all directions. However, the Defendant's Sexual Offender Treatment Provider, J. Barry Welch, made the decision to discharge the Defendant from the program because the determination was made by him that the Defendant was not truthful regarding his intentions for committing the crime that he was convicted of committing. Specifically, Mr. Welch wrote a letter to the Defendant's probation officer which stated in part, *"Although he appeared to be in compliance with supervision and attended all required treatment groups, he was not able to give a credible statement of responsibility for his offense of conviction."*

> . . . .

> 6. This Court believes that the Defendant has in fact been dishonest with his Sexual Offender Treatment Provider regarding his intentions for committing the offense of solicitation of a minor. The Court believes that Defendant has not been truthful about his motivations for committing the crime.

5

The trial court revoked the Defendant's judicial diversion and entered an adjudication of guilt. The court allowed the Defendant to remain on probation rather than require a period of incarceration. However, the court extended the Defendant's probation for an additional six months and ordered the Defendant "to comply with and fulfill the '*Specialized Probation Conditions for Sex Offenders*.'"

The Defendant appealed to the Court of Criminal Appeals, which affirmed the trial court's judgment. State v. Albright, No. M2016-01217-CCA-R3-CD, 2017 WL 2179955, at *10 (Tenn. Crim. App. May 16, 2017), perm. app. granted (Tenn. Sept. 21, 2017). We granted the Defendant's application for permission to appeal in order to consider whether a criminal defendant who pleads nolo contendere to a sex crime and is placed on judicial diversion with probation, including sex offender treatment, must be informed in conjunction with his plea that his failure to admit to certain facts during sex offender treatment may lead to the revocation of his judicial diversion and probation.

## Standard of Review

"If it is alleged that a defendant on judicial diversion has violated the terms and conditions of diversionary probation, the trial court should follow the same procedures as those used for ordinary probation revocations." Alder v. State, 108 S.W.3d 263, 266 (Tenn. Crim. App. 2002) (citing State v. Johnson, 15 S.W.3d 515, 519 (Tenn. Crim. App. 1999)). "These procedures are set forth in Tennessee Code Annotated section 40-35-311 (Supp. 2001)." Id.

Tennessee Code Annotated section 40-35-311 provides that a trial court may revoke a criminal defendant's probation if the judge finds by a preponderance of the evidence that the defendant has violated the conditions of his probation. Tenn. Code Ann. § 40-35-311(e)(1) (2014). We review the trial court's decision in this regard for an abuse of discretion. See State v. Gabel, 914 S.W.2d 562, 564 (Tenn. Crim. App. 1995). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." State v. Bell, 512 S.W.3d 167, 189 (Tenn. 2015). However, "the interpretation of a probation condition and whether it affords a probationer fair warning of the conduct proscribed thereby are essentially matters of law and, therefore, give rise to *de novo* review on appeal." United States v. Gallo, 20 F.3d 7, 11 (1st Cir. 1994); see also State v. Merriman, 410 S.W.3d 779, 791 (Tenn. 2013) (holding that the review of a defendant's due process claim is de novo, with deference given to the trial court's factual findings).

## Analysis

We deem it helpful to begin our analysis with a brief review of the pertinent provisions of the Tennessee Standardized Treatment Program for Sex Offenders, set forth

6

at Tennessee Code Annotated sections 39-13-701 through -709 (2014) ("the Treatment Act"). The Treatment Act created a board charged with developing "guidelines and standards for a system of programs for the treatment of sex offenders that can be utilized by offenders who are placed on probation[.]" Tenn. Code Ann. § 39-13-704(d)(2).[3] Sex offenders placed on probation are required "to submit to an evaluation for treatment [and] risk potential," id. § 39-13-705(a), and "any plan of treatment recommended by the evaluation shall be a condition of the probation," id. § 39-13-705(b). The legislative intent underlying the Treatment Act is as follows:

> (a) The general assembly hereby declares that the comprehensive evaluation, identification, treatment, and continued monitoring of sex offenders who are subject to the supervision of the criminal justice system are necessary in order to work toward the elimination of recidivism by the offenders.
>
> (b) Therefore, the general assembly hereby creates a program that standardizes the evaluation, identification, treatment, and continued monitoring of sex offenders at each stage of the criminal justice system, so that the offenders will curtail recidivistic behavior, and so that the protection of victims and potential victims will be enhanced. The general assembly recognizes that some sex offenders cannot or will not respond to treatment and that, in creating the program described in this part, the general assembly does not intend to imply that all sex offenders can be successful in treatment.

Id. § 39-13-702.

In this case, the Defendant was placed on probation and required to undergo sex offender therapy as a condition of his judicial diversion. The trial court granted judicial diversion as a part of the Defendant's nolo contendere plea. The Defendant was not specifically informed in conjunction with his plea that his court-mandated therapy would require him to admit that he had intended to solicit a minor and that his judicial diversion could be revoked if he refused to make this admission. The Defendant now contends that

---

[3] Another provision of the Treatment Act provides that

> [e]ach sex offender sentenced by the court for an offense committed on or after January 1, 1996, is required, as a part of any sentence to probation, community corrections, or incarceration with the department of correction, to undergo treatment to the extent appropriate to the offender based upon the recommendations of the evaluation and identification made pursuant to § 39-13-705, or based upon any subsequent recommendations by the department of correction, the judicial branch or the department of children's services, whichever is appropriate.

Tenn. Code Ann. § 39-13-706(a).

his due process rights were violated when his judicial diversion was revoked on the basis of his failure to meet a "hidden" requirement that was inconsistent with his nolo contendere plea.[4]

The Defendant's position encompasses two distinct analytical points: first, whether a nolo contendere plea precludes as a matter of law a requirement that a probated defendant make certain admissions during court-mandated sex offender therapy, and second, whether due process requires a defendant ordered to participate in sex offender treatment as a condition of probation to be specifically notified that his probation may be revoked if he refuses to make certain admissions during treatment.

*Nolo Contendere Pleas and Required Subsequent Admissions*

Tennessee Rule of Criminal Procedure 11 provides that a defendant facing criminal charges "may plead not guilty, guilty, or nolo contendere." Tenn. R. Crim. P. 11(a)(1).[5] The Latin phrase "nolo contendere" means "I will not contest it." Black's

---

[4] Preliminarily, we reject the State's contention that the Defendant has waived this due process argument by failing to raise it in the trial court. A fair reading of the Defendant's motion to be relieved from certain conditions of probation reflects the Defendant's position that he had not expected to be required to admit guilt during therapy because such an admission was inconsistent with his nolo contendere plea. Additionally, during argument at the judicial diversion revocation hearing, defense counsel asserted that the therapist's position was inconsistent with the plea agreement and that the therapist was "asking [the Defendant] to do . . . something this court didn't ask him to do." We consider these assertions sufficient to raise the issue that the Defendant had not been informed at the appropriate time that he would be expected to admit the allegations underlying the charged offense in order to successfully complete his probation requirements. Accordingly, we will address the Defendant's claim on the merits.

[5] As we noted in Frazier v. State, 495 S.W.3d 246, 250 n.1 (Tenn. 2016), a criminal defendant may plead guilty pursuant to a "best interest" plea as set forth in the United States Supreme Court case, North Carolina v. Alford, 400 U.S. 25 (1970). Frequently referred to as an "Alford plea," the defendant pleads guilty while maintaining his factual innocence of the crime. Although we noted in Frazier that our Rules of Criminal Procedure refer to Alford pleas as nolo contendere pleas, 495 S.W.3d at 250 n.1, we take this opportunity to clarify that there are technical differences between a "best interest"/Alford plea and a nolo contendere plea. Specifically, because "best interest"/Alford pleas are guilty pleas even though the defendant is protesting his innocence, a factual basis must be established on the record at the plea hearing before the trial court may accept the plea. See Alford, 400 U.S. at 37, 38 n.10; Dortch v. State, 705 S.W.2d 687, 689 (Tenn. Crim. App. 1985). No such factual basis is required for nolo contendere pleas. State v. Crowe, 168 S.W.3d 731, 747 (Tenn. 2005). Additionally, a defendant entering a "best interest"/Alford plea may be estopped from denying his guilt in a subsequent civil action, see, e.g., Stephanos Bibas, Harmonizing Substantive-Criminal-Law Values and Criminal Procedure: The Case of Alford and Nolo Contendere Pleas, 88 Cornell L. Rev. 1361, 1373 (July 2003), while a defendant pleading nolo contendere is not subject to estoppel, see, e.g., Teague v. State, 772 S.W.2d 932, 943 (Tenn. Crim. App. 1988); see also Tenn. R. Evid. 410(2). Nevertheless, as the United States Supreme Court recognized in Alford, there is no "material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence[.]" Alford, 400 U.S. at 37; see also,

Law Dictionary, p. 1048 (6th ed. 1990); see also State v. Crowe, 168 S.W.3d 731, 747 n.19 (Tenn. 2005). As explained by the United States Supreme Court,

> Throughout its history . . . the plea of *nolo contendere* has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency. Fed[eral] Rule [of] Crim[inal] Proc[edure] 11 preserves this distinction in its requirement that a court cannot accept a guilty plea "unless it is satisfied that there is a factual basis for the plea"; there is no similar requirement for pleas of *nolo contendere*, since it was thought desirable to permit defendants to plead *nolo* without making any inquiry into their actual guilt.

North Carolina v. Alford, 400 U.S. 25, 35-36 n.8 (1970); see also Crowe, 168 S.W.3d at 746. As our Court of Criminal Appeals has recognized,

> A plea of nolo contendere admits every essential element of the offense, which is properly alleged in the charging instrument; and it is tantamount to an admission of guilt for purposes of the case in which the plea is entered. Once the plea has been entered, and the trial court has determined that it has been made voluntarily, nothing is left but to render judgment since there is no issue of fact. Moreover, a conviction following a plea of nolo contendere has all the effects of a plea of guilty insofar as the purposes of the case are concerned. The only difference of substance is that a conviction following the entry of a plea of nolo contendere cannot be used against the accused as an admission in any civil suit for the same act.

Teague v. State, 772 S.W.2d 932, 943 (Tenn. Crim. App. 1988) (citations and quotation marks omitted); see also, e.g., United States v. Heller, 579 F.2d 990, 998 (6th Cir. 1978) (recognizing that a nolo contendere plea admits every essential element of the offense charged, that the plea is an admission of guilt for the purposes of the case, and that "nothing is left but to render judgment, for the obvious reason that in the face of the plea

---

e.g., State v. Faraday, 842 A.2d 567, 588 n.17 (Conn. 2004) ("A guilty plea under the Alford doctrine is . . . the functional equivalent [to an unconditional] plea of nolo contendere which itself has the same legal effect as a plea of guilty on all further proceedings within the indictment. . . . The only practical difference is that the plea of nolo contendere may not be used against the defendant as an admission in a subsequent criminal or civil case.") (internal quotation marks and citations omitted); Bibas, supra ("Alford and nolo contendere pleas differ in two main ways: First, nolo contendere pleas avoid estoppel in later civil litigation, while Alford pleas do not. Second, defendants who plead nolo contendere simply refuse to admit guilt, while defendants making Alford pleas affirmatively protest their innocence. By and large, however, Alford is a new extension of the age-old nolo plea.").

no issue of fact exists, and none can be made while the plea remains of record") (internal quotation marks and citations omitted); State v. Shrader, 765 S.E.2d 270, 273 n.5 (W. Va. 2014) (recognizing that the plea of nolo contendere "'constitutes an implied confession of guilt'" (quoting State ex rel. Clark v. Adams, 111 S.E.2d 336, 340 (W. Va. 1959)).

Further, "[a] defendant may plead nolo contendere only with the consent of the court. Before accepting a plea of nolo contendere, the court shall consider the views of the parties and the interest of the public in the effective administration of justice." Tenn. R. Crim. P. 11(a)(2). As noted above, it is not necessary that a factual basis be established before a trial court may accept a plea of nolo contendere. Crowe, 168 S.W.3d at 747.[6]

Thus, although the Defendant did not verbally admit at his plea hearing to the underlying facts which resulted in the charge of soliciting a minor, the Defendant's plea of nolo contendere had the same effect as a plea of guilty insofar as the prosecution and his disposition were concerned. See Alford, 400 U.S. at 35 n.8 ("Throughout its history . . . the plea of *nolo contendere* has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty.").

Nevertheless, at least two jurisdictions have concluded that the closely-related Alford plea to a sex offense precludes requiring the defendant to admit to the conviction offense as a condition of probation. In State v. Birchler, No. 00AP-311, 2000 WL 1473152 (Ohio Ct. App. Oct. 5, 2000), the Ohio intermediate appellate court considered a defendant who had entered an Alford plea to assault and was sentenced to probation, including sex offender treatment. The defendant was terminated from his treatment program after he failed "to acknowledge specific criminal conduct against a victim or any victim at all." Id. at *1. The trial court revoked the defendant's probation on this basis, and the defendant appealed. The appellate court reversed the trial court because the defendant "did not have notice that he would be required to admit specific criminal conduct or that there was a victim of such conduct." Id. at *3. The appellate court reasoned as follows:

> We cannot reconcile [the defendant's] Alford plea and the requirement as a part of his counseling session that he admit he had a victim. An Alford plea is considered a qualified guilty plea because it

---

[6] Nevertheless, the trial court in this case determined at the plea hearing that a factual basis existed for the Defendant's offense. At least one federal court of appeals considers it the "better practice" for trial courts to inquire as to the evidence supporting a criminal charge before accepting a nolo contendere plea. Ranke v. United States, 873 F.2d 1033, 1037 (7th Cir. 1989); see also Crowe, 168 S.W.3d at 747 n.18 (noting that Tennessee Rule of Criminal Procedure 11 does not prohibit a trial court from requiring that a factual basis be established before accepting a nolo contendere plea and recognizing that the trial court "may determine that an inquiry into the factual basis is necessary to ensure that the plea is voluntarily, knowingly, and understandingly entered").

10

allows a defendant to enter a guilty plea yet maintain his or her innocence. Requiring [the defendant] to admit that there was a victim or to specific criminal conduct against a victim would be in contradiction to his maintenance of factual innocence pursuant to Alford.

Id. at \*2 (citation omitted);[7] see also People v. Walters, 627 N.Y.S.2d 289, 291 (N.Y. Cnty. Ct. Apr. 25, 1995) (reversing probation revocation for defendant's failure to admit guilt during sex offender therapy because requiring defendant to admit factual guilt during treatment after Alford plea was "directly inconsistent with" the Alford plea).

The problem with this reasoning is twofold. First, this approach treats an admission in the therapy context as the equivalent of guilt in the criminal context. However, as recognized by the West Virginia Supreme Court, "a distinction must be made between guilt as a matter of law and guilt as an acknowledgement of responsibility for therapeutic purposes." Shrader, 765 S.E.2d at 279;[8] see also People v. Birdsong, 958 P.2d 1124, 1128 (Colo. 1998) (en banc) (recognizing that "an individual might be willing to admit to something in a therapeutic setting but not in a court of law").[9]

---

[7] Several years later, a different panel of the Ohio intermediate appellate court reached a different conclusion on similar facts. In State v. Hughes, No. CA2002-11-124, 2003 WL 21497235 (Ohio Ct. App. June 30, 2003), the defendant entered an Alford plea to two sex offenses and was subsequently discharged from his sex offender treatment (a condition of his community control release) because he "continued to maintain his innocence, asserting that he had committed no crime, and that there was no victim." Id. at \*1. The defendant claimed on appeal that the ensuing revocation of his community control release was "incongruous" with his Alford plea. Id. Noting that, after accepting the defendant's Alford plea, the trial court "was obliged to treat [the defendant] as any other convicted defendant with regard to sentencing," id. at \*3, the intermediate appellate court held that the trial court's instruction to the defendant that he would have to participate in the sex offender program was sufficient to notify the defendant of the conduct expected of him, id. The court further noted that it had found no authority "indicating that the trial court, when requiring completion of a program such as a sexual offender program, must detail the minutiae of the program's requirements." Id. The court affirmed the trial court's revocation of the defendant's community control sentence. Id.

[8] Thus, in our view, the dissent's repeated assertions that the Defendant was discharged from his treatment program because he would not admit "guilt" to the charge of solicitation of a minor are misleading. The Defendant was discharged from his therapy program because, while admitting that he told the undercover officer that he wanted "topless" photographs of a minor female and that he wanted to have sex with her, he refused to acknowledge during treatment that he had harbored any pedophilic intent. The Defendant's steadfast refusal to acknowledge in therapy any illegal intent indicated his lack of good faith and rendered his therapy ineffective. Indeed, the trial court specifically found that the Defendant had been "dishonest" and "not truthful" during his therapy sessions.

[9] Moreover, the ultimate effect of an admission in the therapy setting is the successful completion of a probation requirement, and the admission has no additional impact on the defendant's sentence or any sentence that might be imposed upon him in the future.

11

Second, this approach requires trial courts placing sex offenders on probation to consider the methodology by which the offender became convicted and, moreover, requires different information to be imparted to different offenders depending on that methodology. Thus, if a defendant pleads nolo contendere or enters a "best interest"/Alford plea, he would have to be specifically warned about the requirements of sex offender treatment. A "straight" plea of guilty, presumably, would not be entitled to this same level of actual notice. Query the notice required to be given a defendant who pleads "not guilty" but is convicted after his or her trial, and query whether the notice would differ depending upon whether the defendant testified at trial that he had not committed the charged acts.

We emphasize that the methodology utilized for arriving at a conviction, whether it be upon a trial after a plea of not guilty, upon an Alford plea accompanied by a protestation of actual innocence, upon a plea of nolo contendere, or upon a "straight" plea of guilty, does not alter the legal fact of conviction for sentencing purposes.[10] Thus, we reject the Defendant's implicit request to create distinctions based on the method by which a defendant becomes convicted as to the notice that a trial court must provide to a defendant being placed on probation. See Birdsong, 958 P.2d at 1127 ("An Alford plea is a guilty plea. As such, the trial court's obligations to advise the defendant were no greater than with any other guilty plea."); see also Zebbs v. Commonwealth, 785 S.E.2d 493, 498 (Va. Ct. App. 2016) ("Once an accused has been found guilty and sentenced, any distinction between an ordinary guilty plea and an Alford plea of guilty ceases to be relevant for purposes of a subsequent violation of a suspended sentence.").

Other jurisdictions also have rejected special treatment for sex offenders entering nolo contendere or Alford pleas. For instance, the Delaware Supreme Court has spoken in strong language about this issue in Betts v. State, 983 A.2d 75 (Del. 2009). In Betts, the defendant pled nolo contendere to six counts of a sex crime. Id. at 76. His plea agreement required him to register as a sex offender and to complete a sexual disorders counseling program. Id. The defendant subsequently "refused to discuss his conduct underlying the offenses" and was discharged from treatment for that reason. Id. The trial court then revoked the defendant's probation. Id. On appeal, the defendant argued that his nolo plea prevented the state from requiring that he discuss the underlying conduct during treatment. Id.

The Delaware Supreme Court rejected this contention and affirmed the trial court's order of revocation, reasoning as follows:

---

[10] We recognize that, in this case, the Defendant was placed on judicial diversion and that, accordingly, his conviction was not filed of record nor was he "sentenced" until after the revocation hearing. See Dycus, 456 S.W.3d at 926 (recognizing that judicial diversion and the resulting probationary period "do not constitute a sentence") (citations omitted). In the context of this discussion, this distinction is immaterial.

"There is no merit to [defendant's] argument that he can not be required to 'admit' guilt as part of his treatment program because he entered a plea of *nolo contendere*. [Defendant's] plea does not confer upon him a right to violate a condition of his bargained-for plea agreement."

. . . [A] *nolo contendere* plea does not receive elevated constitutional protections over a traditional guilty plea, nor do any special promises accompany the plea offer.

. . . When a sentencing judge foregoes incarcerating a potential recidivist, he does so because of reliance on the counseling process. The judge offers probation, on the rational assumption that effective counseling acts as a viable preventative alternative to incarceration. If the sentenced defendant refuses to participate in preventative counseling, he undermines the viability of that alternative to incarceration. [The defendant] gained the benefit of this bargain; he must uphold his concomitant obligations.

Irrespective of the type of plea agreement, the sexual offender may not bargain out of trial and potential incarceration, avoid counseling, and refuse a polygraph. Until he fully engages in counseling, [the defendant] remains a serious public threat, in violation of his plea agreement.

Id. at 77 (quoting Whalen v. State, 2000 WL 724683, at *1 n.7 (Del. May 18, 2000) (Table)) (citation omitted). We wholeheartedly agree with this analysis.

Similarly, in State ex rel. Warren v. Schwarz, 579 N.W.2d 698 (Wis. 1998), the Wisconsin Supreme Court considered a defendant who had entered an Alford plea to a sex offense and was placed on probation, including sex offender therapy. Id. at 703-04. The defendant refused to admit in therapy that he had committed the offense, and his probation was subsequently revoked on that basis. The defendant appealed, arguing that "acceptance of an Alford plea necessarily contemplates that defendants will be allowed to maintain their factual innocence, even while completing the terms of probation which have been imposed upon them." Id. at 706.

The Wisconsin Supreme Court rejected this contention, noting that "[a] defendant's protestations of innocence under an Alford plea extend only to the plea itself" and asserting that, "[w]hatever the reason for entering an Alford plea, the fact remains that when a defendant enters such a plea, he becomes a convicted sex offender and is treated no differently than he would be had he gone to trial and been convicted by a jury." Id. at 707. The Wisconsin court continued: "Put simply, an Alford plea is not the saving grace for defendants who wish to maintain their complete innocence. Rather, it is a device that defendants may call upon to avoid the expense, stress and

13

embarrassment of trial and to limit one's exposure to punishment." Id. The Wisconsin Supreme Court affirmed the trial court's revocation of the defendant's probation. Id.

Also, in State v. Faraday, 842 A.2d 567, 572 (Conn. 2004), the Connecticut Supreme Court considered a defendant who entered an Alford plea to sexual assault. The defendant was placed on probation including the requirement that he attend sex offender treatment. Id. at 573. The defendant was discharged from his treatment program because he refused to admit guilt of the underlying charges, and the defendant's probation was revoked. Id. On appeal, the defendant argued that "the trial court could not revoke his probation based on his failure to admit guilt because such a requirement was inconsistent with his guilty plea under the Alford doctrine." Id. at 587.

The Connecticut Supreme Court rejected this argument, noting that "[t]he entry of a guilty plea under the Alford doctrine carries the same consequences as a standard plea of guilty. By entering such a plea, a defendant may be able to avoid formally admitting guilt at the time of sentencing, but he nonetheless consents to being treated as if he were guilty with no assurances to the contrary." Id. at 588 (citations omitted). The Connecticut court noted that, when accepting the defendant's plea, the trial court "did not, in any way, indicate that the defendant could unconditionally maintain his innocence for any and all purposes," and concluded that, although the defendant was "free to maintain the innocence associated with his plea," he also was required to comply with the conditions of his probation if he wanted to maintain the "conditional liberty" created thereby. Id. at 588-89 (citation omitted); see also, e.g., Birdsong, 958 P.2d at 1130 (holding that, "by accepting the Alford plea [to a sex offense], the trial court did not in any way obviate later revocation proceedings for failure to admit guilt in a therapeutic context"); State v. Jones, 926 P.2d 1318, 1321 (Idaho Ct. App. 1996) (holding that the defendant's Alford plea to a sex offense "did not exempt him from fulfilling the terms of his probation, including the requirement of full disclosure which was deemed essential to successful participation in sexual abuse counseling and rehabilitation"); State v. Alston, 534 S.E.2d 666, 670 (N.C. Ct. App. 2000) (rejecting defendant's claim that his refusal to admit sex offense in sex offender therapy should be excused because he entered an Alford plea, holding that the defendant's "protestations of innocence under his 'Alford plea' did not extend to future proceedings," that "his claim of innocence was applicable only to the plea itself, a plea of guilty," and that the Alford plea "bestowed upon defendant no rights, promises, or limitations with respect to the punishment imposed . . . and authorized the trial court to treat defendant as any other convicted sexual offender") (citations omitted); Ellerbe v. State, 80 S.W.3d 721, 723 (Tex. Ct. App. 2002) ("A plea of nolo contendere does not relieve a defendant from having to admit to the commission of an offense so as to fully participate in a treatment program as a condition of community supervision."); Carroll v. Commonwealth, 682 S.E.2d 92, 101 (Va. Ct. App. 2009) (rejecting defendant's argument that, because he entered Alford plea to sex offense, his probation could not be revoked for failing to admit crime in therapy, noting that, although "there is an inconsistency between any defendant's protestations of innocence and the probation

condition that he admit his guilt," nevertheless, "[a] defendant who has entered an Alford plea is not an innocent person for the purposes of criminal sentencing and probation").

We agree with the reasoning of these decisions and hold that a defendant pleading nolo contendere to a sex offense may nonetheless be mandated to participate in sex offender treatment which may require admissions to the conduct underlying the conviction(s).

*Due Process Requirements*

We turn now to the Defendant's argument that he is entitled to relief because the trial court did not specifically inform him about the requirements of his mandated sex offender therapy. With respect to the revocation of judicial diversion or probation, "a defendant who is granted probation has a liberty interest that is protected by due process of law." State v. Stubblefield, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997) (citing Practy v. State, 525 S.W.2d 677, 680 (Tenn. Crim. App. 1974)); see also, e.g., United States v. Twitty, 44 F.3d 410, 412 (6th Cir. 1995) (stating that, "since revocation of probation may result in loss of liberty, the Fifth Amendment requires that a defendant be accorded due process") (citing Gagnon v. Scarpelli, 411 U.S. 778, 781-82 (1973); United States v. Dodson, 25 F.3d 385, 388 (6th Cir. 1994)). The due process to which a probated defendant is entitled includes "notice or fair warning of what conduct might result in revocation." Twitty, 44 F.3d at 412 (citations omitted); see also Stubblefield, 953 S.W.2d at 225 (stating that "it is fundamental to our system of justice through due process that persons who are to suffer penal sanctions must have reasonable notice of the conduct that is prohibited") (citing United States v. Harriss, 347 U.S. 612, 617 (1954); State v. Ash, 729 S.W.2d 275, 279 (Tenn. Crim. App. 1986)).

On the basis of these principles, the Defendant claims that he was entitled to "fair warning" that his judicial diversion could be revoked if he refused to admit in his treatment program the same facts that he was not required to admit in his plea hearing. He contends that, because he was not timely informed of this potential ground for revocation, his due process rights were violated when the trial court revoked his judicial diversion.

This Court previously has not considered this precise issue. We begin our analysis recognizing that our Court of Criminal Appeals has addressed the due process argument in a case involving a regular guilty plea. In State v. Gillman, the defendant pled guilty to one count of rape and was placed on probation with the requirement that she participate in sex offender treatment. No. M2005-01863-CCA-R3-CD, 2006 WL 2960598, at *1 (Tenn. Crim. App. Oct. 18, 2006). Eventually, she was discharged from her treatment program for noncompliance based upon her refusal to accept responsibility for her crime, and the trial court revoked her probation. See id. at *1-4.

15

On appeal, the Court of Criminal Appeals first noted that "due process requires that probationers only be held responsible for violations of those conditions of probation of which they were reasonably apprised." Id. at *4 (citing Stewart v. State, No. M1999-00684-CCA-MR3-CD, 2000 WL 374756 (Tenn. Crim. App. Apr. 7, 2000)). The court then framed the issue as "whether the [defendant] was sufficiently on notice that, as a condition of her probation, she would have to admit her offense while enrolled in the sex-offender treatment program." Id. at *6. Noting that this was an issue of first impression, the Gillman court recognized that courts in other states were split on the issue. The Gillman court then considered authority from Colorado, Connecticut, Florida, and North Dakota before holding that a defendant must be given notice that she may be required to admit to criminal conduct as part of a sexual offender treatment program. Id. at *6-7.

We reject the Court of Criminal Appeals' analysis in Gillman. The Gillman analysis is unpersuasive. First, the defendant in the Colorado case cited by the Gillman court had received actual notice in the sentencing hearing that he would be required to admit guilt as part of a sex offender treatment program. Thus, the case was inapposite. See People v. Ickler, 877 P.2d 863, 867 (Colo. 1994) (en banc). Similarly, the cited Connecticut statute has been construed by courts in that state as providing defendants with constructive notice that their probation could be revoked for failure to admit criminal conduct during treatment. See Faraday, 842 A.2d at 587 (construing Conn. Gen. Stat. Ann. § 53a-32a).[11] The Florida intermediate appellate court decision relied upon by the Gillman court subsequently was overruled by the Florida Supreme Court. The Florida Supreme Court expressly rejected the proposition "that where a probationer is not told prior to the entry of a plea that an admission of wrongdoing is required [in sex offender treatment], the probationer does not have sufficient notice of the admission requirement for the probationer's refusal to admit sexual misconduct to be a willful violation." Staples v. State, 202 So.3d 28, 34 (Fla. 2016) (overruling Diaz v. State, 629 So.2d 261 (Fla. Dist. Ct. App. 1993)). Finally, the North Dakota Supreme Court decision relied upon by the Gillman court, which held that revocation of a defendant's probation is not permitted unless a trial court has given the defendant "actual, definite notice" that his "failure to admit guilt as part of treatment would constitute a violation of probation,"

---

[11] Connecticut General Statute section 53a-32a (West 2001) provides as follows:

> If a defendant who entered a plea of nolo contendere or a guilty plea under the Alford doctrine to [certain sex offenses] and was ordered to undergo sexual offender treatment as a condition of probation, becomes ineligible for such treatment because of such defendant's refusal to acknowledge that such defendant committed the act or acts charged, such defendant shall be deemed to be in violation of the conditions of such defendant's probation and be returned to court for proceedings in accordance with [the statute regarding probation revocation].

16

Morstad v. State, 518 N.W.2d 191, 194 (N. D. 1994), has not been adopted in any other state jurisdiction.[12]

Respectfully, we disagree with the Gillman court and the North Dakota Supreme Court that a sex offender placed on probation, including sex offender treatment, must be given "actual, definite notice" that his probation may be revoked if he refuses to admit during treatment that he engaged in the underlying criminal conduct, regardless of what type of plea the defendant enters. In our view, with regard to this case, common sense indicates that a reasonable person in the Defendant's position would realize that court-ordered sex offender treatment would involve some acknowledgement of the underlying criminal conduct. First, the Defendant was made aware at his plea hearing that he was going to have to register as a sex offender. An individual's registration as a sex offender is tantamount, in and of itself, to an admission that the individual has committed a sex offense. Second, as set forth above, the Defendant also was made aware in conjunction with his plea that he was going to have to participate in sex offender treatment. One does not participate in sex offender treatment unless one is a sex *offender*. The Defendant pled nolo contendere to solicitation of a minor, a sex *offense*. Accordingly, the Defendant was provided with at least implied notice that he would need to acknowledge during treatment that he had engaged in criminal conduct.[13]

Moreover, it is disingenuous for the Defendant to claim that he had no awareness that his mandated sex offender treatment program would require him to acknowledge that he had committed the elements of the sex offense to which he had pled no contest, including the mens rea element.[14] See State v. Coleman, 632 A.2d 21, 23 (Vt. 1993)

---

[12] The dissent cites to one federal case and several state cases for the proposition that due process requires a defendant sentenced to probation be given "actual notice" when non-criminal conduct may lead to revocation. See United States v. Simmons, 812 F.2d 561, 565 (9th Cir. 1987); People v. Calderon, 356 P.3d 993, 997 (Colo. Ct. App. 2014); State v. Boseman, 863 A.2d 704, 712 (Conn. App. Ct. 2004); State v. Monson, 518 N.W.2d 171, 173 (N.D. 1994); State v. Budgett, 769 A.2d 351, 354 (N.H. 2001); State v. Katon, 719 A.2d 430, 433 (Vt. 1998). None of these cases, however, holds that a defendant required to successfully complete sex offender treatment must be told explicitly at his plea hearing that his suspended sentence may be revoked if he refuses to acknowledge during treatment that he committed the underlying criminal conduct.

[13] The Defendant was given actual, written notice that he would be expected to admit to the conduct underlying his criminal charge no later than January 6, 2016, when the Defendant signed his Treatment Plan which included as the first objective that the Defendant "admit to 100 percent elements of the offense as described by his victims through the official victims' statement." The Defendant did not file a motion to be relieved from this requirement until February 19, 2016, *after* he had been terminated from treatment.

[14] We emphasize that the Defendant pled nolo contendere, not "not guilty," and a nolo plea has the same impact as a guilty plea insofar as the case itself is concerned. See Teague, 772 S.W.2d at 943. Indeed, the Defendant acknowledged in his written plea document that his plea would result in the trial court finding him guilty.

(recognizing that "it is well known that any therapy treatment begins with recognition of the problem, in this case, an admission of guilt") (Morse, J., concurring); see also State v. Reilly, 760 A.2d 1001, 1011 (Conn. Ct. App. 2000) (recognizing that notice of conduct required or prohibited by conditions of probation may arise from a "common sense inference" and that actual notice must be delivered only where the conditions cannot be "reasonably interpreted" to require or prohibit the conduct at issue).[15]

As stated by the United States Court of Appeals for the First Circuit,

fair warning is not to be confused with the fullest, or most pertinacious, warning imaginable. Conditions of probation do not have to be cast in letters six feet high, or to describe every possible permutation, or to spell out every last, self-evident detail. Conditions of probation may afford fair warning even if they are not precise to the point of pedantry. In short, conditions of probation can be written—and must be read—in a commonsense way.

United States v. Gallo, 20 F.3d 7, 12 (1st Cir. 1994) (citations omitted). Thus, the trial court was not required to deliver "actual, definite notice" to the Defendant that his sex offender treatment would require certain admissions.

Based upon the reasons set forth above, we expressly overrule Gillman.

We also find it helpful to analogize to the due process requirements attendant upon guilty pleas under current Tennessee law for our holding that "actual, definite notice" was not required. As we recently reiterated in Ward v. State, the Due Process Clause of the United States Constitution requires that guilty pleas be accepted only if they are knowing, voluntary, and intelligent. 315 S.W.3d 461, 465 (Tenn. 2010) (citations omitted). If a defendant does not understand the consequences of his plea, it cannot be considered voluntary or knowing. Id. "However, neither our federal nor state constitution requires that an accused be apprised of every possible or contingent consequence of pleading guilty before entering a valid guilty plea. Courts are constitutionally required to notify defendants of only the direct consequences—not the collateral consequences—of a guilty plea." Id. at 466-67 (citations omitted). "The distinction between a collateral and a direct consequence has often been formulated as turning on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." Id. at 467 (internal quotation marks and citation omitted). In Ward, we determined that the registration requirements imposed by Tennessee's Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act, Tenn. Code Ann. §§ 40-39-201 through -215 (2006 & Supp. 2009) ("the Registration Act"), are a

---

[15] The Reilly court specifically acknowledged Connecticut General Statute section 53a-32a, see supra n.10, as a "statutory exception to actual notice." 760 A.2d at 1009 n.18.

18

collateral consequence of a guilty plea.  Accordingly, a trial court is not constitutionally required to inform a defendant pleading guilty to a sex offense about the Registration Act's registration requirements.  Id. at 472.[16]

If a defendant who is required to abide by the requirements of the Registration Act fails to do so, he or she can be convicted of a Class E felony.  Tenn. Code Ann. § 40-39-208(b) (2014).  Moreover, "[n]o person violating [the Registration Act] shall be eligible for suspension of sentence, diversion or probation until the minimum sentence is served in its entirety."  Id.  If due process does not require a defendant pleading guilty to a sex offense to be informed about the requirements of the Registration Act and the potential penalties for failing to comply with the Act, it makes no sense to require a trial court to inform a defendant pleading guilty or nolo contendere to a sex offense that failing to comply with the requirements of his required sex offender therapy may lead to the revocation of his probation.  Indeed, at least two federal courts of appeal have concluded that "the condition that a defendant admit his guilt as part of a required rehabilitation program is a collateral consequence."  Duke v. Cockrell, 292 F.3d 414, 417 (5th Cir. 2002) (citing Warren v. Richland Cnty. Cir. Ct., 223 F.3d 454, 458 (7th Cir. 2000), cert. denied 531 U.S. 1168 (2001)).

In sum, we hold that the Defendant is not entitled to relief on the basis that the trial court did not specifically inform him that his refusal to admit to criminal conduct during his sex offender therapy could result in the revocation of his judicial diversion.

**Conclusion**

For the foregoing reasons, we hold that a trial court placing a sex offender on judicial diversion or probation that includes sex offender treatment as a condition is not required to inform the offender that his or her failure to admit to certain facts or states of mind in therapy may result in the revocation of his or her judicial diversion or probation.[17]

Additionally, in this case, the trial court did not violate the Defendant's due process rights by revoking his judicial diversion.  The trial court was not required to

---

[16] The Ward Court, however, also concluded that a sentence of community supervision for life, which must be imposed for certain crimes pursuant to Tennessee Code Annotated section 39-13-524 (2006 & Supp. 2009), "is a direct and punitive consequence of a plea of guilty" to any of those enumerated crimes.  Ward, 315 S.W.3d at 476.  "Consequently, trial courts have an affirmative duty to ensure that a defendant is informed and aware of the lifetime supervision requirement prior to accepting a guilty plea."  Id.

[17] Nevertheless, we encourage trial courts, as a matter of best practices, to advise defendants required to participate in sex offender therapy that the successful completion of such therapy may require admissions regarding the conduct underlying the defendant's conviction(s).

19

inform the Defendant that he would be required to admit the elements of his criminal conduct as a part of his sexual offender treatment plan. Accordingly, we affirm the judgment below.


_____
JEFFREY S. BIVINS, CHIEF JUSTICE