IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

August 5, 2025 Session

**STATE OF TENNESSEE v. MARCUS LEVON SOMERVILLE**

**Appeal from the Circuit Court for Haywood County**
**No. 8631      Clayburn L. Peeples, Judge**

_____

**No. W2024-01357-CCA-R3-CD**

_____

The Defendant, Marcus Levon Somerville, appeals from his convictions for two counts of aggravated assault, contending that the trial court abused its discretion by denying his requests for judicial diversion and alternative sentencing. Additionally, he notes that the record is devoid of any proof that he affirmatively entered a guilty plea. After review, we agree that the Defendant never pled guilty to these offenses, rendering his convictions void as a matter of law. Accordingly, the judgments of the trial court are reversed, the Defendant's convictions are vacated, and the case is remanded for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgments of the Circuit Court Reversed and Remanded**

KYLE A. HIXSON, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and STEVEN W. SWORD, JJ., joined.

Josie S. Holland (on appeal); and Timothy J. Francavilla (at trial court proceedings), Memphis, Tennessee, for the appellant, Marcus Levon Somerville.

Jonathan Skrmetti, Attorney General and Reporter; Raymond J. Lepone and J. Katie Neff, Assistant Attorneys General; Frederick Hardy Agee, District Attorney General; and Marc P. Murdaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

On July 3, 2023, the Defendant was observed in the street outside his home acting erratically. During this episode, he brandished a gun at two occupants of a vehicle being driven on this street. On March 4, 2024, a Haywood County grand jury indicted the Defendant, charging him with two counts of aggravated assault involving the display of a deadly weapon. *See* Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii). At a series of proceedings before the trial court in July and August of 2024, the parties indicated that the Defendant desired to enter a "blind plea" of guilt and be sentenced by the trial court. The Defendant also made a request for judicial diversion and alternative sentencing, and he indicated that a serious mental health issue, for which he was now receiving treatment, had attended the commission of these offenses. However, the trial court voiced its reluctance to consider any type of alternative sentencing without a "plan" in place to prevent recurrence. Thereafter, the trial court entered judgment against the Defendant and imposed a sentence of three years to serve on each count, to be run concurrently, in the Tennessee Department of Correction. The relevant proceedings are summarized below.

On July 8, 2024, the trial court advised "everybody in the courtroom" who would be entering a guilty plea that day of their rights "to the assistance of a lawyer," to "have a jury trial," to "confront and cross-examine" witnesses against them, to "call witnesses on [their] own behalf," and "to appeal [a conviction following a jury trial] to the next higher court." Following this, the trial court inquired of the Defendant directly whether he personally understood those rights, and the Defendant responded that he did understand and had no further questions. Defense counsel then advised the trial court that the Defendant wanted "to enter a plea in this matter" and ask for "either diversion or probation or some type of alternative sentencing." The State informed the trial court that it would oppose alternative sentencing and was not in a position to reach an agreement regarding the Defendant's sentence. Thereafter, the trial court ordered completion of a pre-sentence investigation report and informed the parties that it would "take the plea on [the Defendant's next court date] and sentence [the Defendant] that day too."

On July 17, 2024, the trial court confirmed with the parties that the Defendant had not yet entered a guilty plea, and it reviewed the Defendant's pre-sentence investigation report and certificate of eligibility for judicial diversion. During this proceeding, one of the victims testified regarding the offenses, and the Defendant testified that he "accept[ed] accountability" and apologized to the victim. The Defendant also detailed the mental health difficulties he had been experiencing at the time of the offense, but he stated that

after having received treatment, he was no longer "hearing voices or hallucinating and seeing things. [The medication] put me back in my right mind." After the testimony concluded, the trial court stated to defense counsel,

> I'm advising you that if he pleads guilty . . . I don't think diversion is appropriate. . . . What I'm going to do -- if he pleads guilty, I'm going to find him guilty of two counts of Aggravated Assault. I'm going to set his sentence at three years in each [count] to run concurrently. Now he may not want to do that.

The trial court indicated that it was concerned about the Defendant's potential non-compliance with his medication and his risk to reoffend without some sort of "plan" in place to address those concerns. The parties then agreed to reset the case again.

On August 8, 2024, defense counsel provided the trial court with a letter from the facility where the Defendant would be receiving outpatient treatment following his release from custody, and the parties reiterated their positions regarding alternative sentencing and judicial diversion. The trial court then stated,

> I'm telling you right now that if he pleads guilty, I would be very surprised if I did not sentence him to three years as to each [count and] run them concurrently to serve. So if he wants to -- I just want him to be fully aware of what's likely to happen if he allows me to hear this.

The trial court acknowledged that it "technically . . . could" place the Defendant on probation and diversion "under the law," but it did not consider that appropriate in this case, based in part on the "serious, serious problem in Haywood County with gun crimes." The following exchange then took place:

> [Defense counsel]: Your Honor, we need to move forward with the plea. I mean he has no other option. He's been in jail for [thirteen] months. The State is not making an offer. We're not contesting the fact of what happened.
>
> The Court: All right. I am sentencing you to -- finding you guilty of two counts of Aggravated Assault and setting your sentence at three years as a Standard Offender for each [count], [and] ordering those sentences to run concurrently. I order you to pay the costs.

At no point during the proceedings on this date did the Defendant address the trial court. The technical record in this case contains a form entitled "Plea of Guilty and Waiver of Rights," which was signed by the State and the trial court and filed on August 8, 2024, but it was not signed by the Defendant or defense counsel. The uniform judgment documents, likewise signed by the State and the trial court, also bear a notation that the Defendant "pled guilty," but the only date contained on these forms is August 8, 2024.

The Defendant, who was granted an appellate bond, filed a timely notice of appeal.

## II.    ANALYSIS

On appeal, the Defendant contends that the trial court abused its discretion by denying his requests for alternative sentencing and judicial diversion, and he further complains of a procedural defect stemming from the lack of a record indicating that he affirmatively entered a guilty plea. The State responds that the trial court properly exercised its discretion in denying the Defendant's requests and sentencing him to incarceration, and it further contends that the Defendant did plead guilty based upon the notation indicating such on the uniform judgment documents.

The United States Constitution prohibits the states from depriving "any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. A state shall not deprive a criminal defendant of his liberty "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In every criminal case resulting in a sustainable conviction, either (1) guilt must be proven beyond a reasonable doubt to the trier of fact, or (2) a defendant may enter a knowing and voluntary waiver of the right to such a finding by entering a guilty or *nolo contendere* plea. *See id.* ("Due process commands that no man shall lose his liberty unless the Government has borne the burden of . . . convincing the factfinder of his guilt [beyond a reasonable doubt]." (quoting *Speiser v. Randall*, 357 U.S. 513, 525-26 (1958))); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969) ("A plea of guilty is . . . itself a conviction; nothing remains but to give judgment and determine punishment."); *State v. Albright*, 564 S.W.3d 809, 817 (Tenn. 2018) ("A plea of *nolo contendere* . . . is tantamount to an admission of guilt for purposes of the case in which the plea is entered." (quoting *Teague v. State*, 772 S.W.2d 932, 943 (Tenn. Crim. App. 1988))). Thus, a proper adjudication of guilt is a prerequisite to the imposition of any punitive sentence.

"A guilty plea must be voluntarily, understandingly, and knowingly entered," and trial courts must question defendants on the record to establish this before accepting a guilty plea. *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing *Boykin*, 395

U.S. at 242). Additionally, in Tennessee, every "plea of guilty . . . shall be reduced to writing and signed by the defendant." Tenn. R. Crim. P. 11(e). Relatedly, the Tennessee Criminal Sentencing Reform Act of 1989 provides that: "In all contested criminal cases, the issue of guilt or innocence is submitted to the trier of fact for a verdict on that issue alone. If the defendant is found or pleads guilty, sentence shall be set in accordance with this chapter in a separate sentencing hearing." Tenn. Code Ann. § 40-35-201(a); *see also* Tenn. R. Crim. P. 32(b) ("After a verdict or plea of guilty . . . the sentence shall be fixed as provided by law.").

The issue of the Defendant's guilt was not submitted to a trier of fact in this case, but there is nothing resembling a written guilty plea or waiver of rights signed by the Defendant in this record. *See* Tenn. R. Crim. P. 11(e). Moreover, we are not persuaded by the State's assertion that the "pled guilty" notations on the judgment forms suffice to prove that the Defendant affirmatively entered a plea of guilty in accordance with the applicable rules of law. *See Howell*, 185 S.W.3d at 330-32. The transcripts of the proceedings in this case establish the opposite. At all three hearings, the parties and the trial court repeatedly confirmed that the Defendant had not yet entered a guilty plea. Immediately before the trial court pronounced judgment in this case at the final hearing, defense counsel expressed a desire to "move forward with the plea." But no plea occurred thereafter. There is a difference between a defendant expressing a desire, through counsel, to plead guilty and the defendant *actually doing so*, thereby knowingly and voluntarily accepting punishment and waiving the statutory and constitutional rights associated with a plea of guilty. The record in this case reveals that the Defendant never pled guilty, nor was he found guilty by a trier of fact beyond a reasonable doubt. *See* Tenn. Code Ann. § 40-35-201(a). We, therefore, need not examine the propriety of the trial court's sentencing determination in this case because the trial court lacked jurisdiction to impose a sentence of any kind. *See State v. Smith*, No. E2004-02448-CCA-R3-CD, 2005 WL 2179578, at *4 (Tenn. Crim. App. Sep. 9, 2005) ("Obviously, if no guilty plea was entered by the Defendant, there was no conviction."). Likewise, the trial court lacked jurisdiction to enter judgments of conviction, and the same are thus vacated. *See generally* Tenn. R. Crim. P. 32 (noting that a judgment of conviction follows the imposition of a sentence); *see also id.* ("If the trial court did not 'accept' the Defendant's guilty plea in her presence in open court, the resulting judgments of conviction are void.").

## III.    CONCLUSION

Based upon the foregoing and consideration of the record as a whole, we reverse the judgments of the trial court, vacate the Defendant's convictions, and remand this case for further proceedings consistent with this opinion.

s/ Kyle A. Hixson
KYLE A. HIXSON, JUDGE