IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 2, 2021

**STATE OF TENNESSEE v. JESSIE JAMES SOMERVILLE, IV**

**Appeal from the Circuit Court for Lauderdale County**
**No. 10479    Joe H. Walker, III, Judge**

_____

**No. W2020-00105-CCA-R3-CD**

_____

Defendant, Jessie James Somerville, IV, was indicted by the Lauderdale County Grand Jury for one count of premeditated first degree murder and one count of felony reckless endangerment. Defendant entered no contest pleas to second degree murder and felony reckless endangerment. On the day of Defendant's scheduled sentencing hearing, Defendant made an oral motion to withdraw his pleas, which the trial court took under advisement and subsequently denied by written order. Following a sentencing hearing, the trial court sentenced Defendant as a Range I standard offender to serve concurrent sentences of 22 years for his second degree murder conviction and one year for his felony reckless endangerment conviction. In this appeal as of right, Defendant contends that the trial court erred by denying his motion to withdraw his pleas and that his sentence is excessive. Having reviewed the entire record and the briefs of the parties, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J. ROSS DYER, JJ., joined.

Bryan R. Huffman, Covington, Tennessee, for the appellant, Jesse James Somerville, IV.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Mark E. Davidson, District Attorney General; and Julie Pillow, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

On September 30, 2019, the day Defendant's trial was scheduled to begin, Defendant entered no contest pleas[1] to second degree murder and felony reckless endangerment. The State offered the following factual basis for Defendant's pleas:

[O]n November 27, 2015, there was a Thanksgiving party at Keeley's Club and shots rang out at 2:12, and Mr. Samuel Andrew Johnson was shot and killed. It was a close-range-near-contact bullet wound to the back, and he died on scene.

During the course of the investigation, [the] TBI was given information that [Defendant] was stopped in Shelby County, and during the follow-up with regard to that, he was stopped with a weapon. They recovered the weapon, and they did ballistics examination with the weapon and the bullet that was recovered from the victim and that did match. So [Defendant] was in possession of the murder weapon. And I believe that stop occurred December 22, 2015, so a few short weeks after.

[Defendant] was interviewed at the Tipton County interview room. That was video and audio recorded. At that time he gave a statement placing himself in close proximity to the victim but sta[t]ed that Logan Brown was the one that actually shot the victim, and it was Logan Brown's gun that he had at the time of the stop.

However, there was video at Keeley's Club that night, and we were able to review video and were able to discredit numerous facts that [Defendant] had put in that statement. One being that he stated that Logan Brown and he rode to the club together, and it is very apparent that they did not. Based on the video recordings that they arrived separately and with a pretty substantial time gap.

The video would have also shown [Defendant] leaving the club, going out to a vehicle, [and] coming back in. We believe that that was when he retrieved this weapon. He walked around the metal detector, was stopped, was made to walk through the metal detector, which lit up like a Christmas tree, and then was given a very minor pat-down. And then moments later,

---

[1] The record makes interchangeable references to Defendant's "best interest/*Alford* pleas" and "nolo contendere pleas." "[T]here are technical differences between a 'best interest'/*Alford* plea and a nolo contendere plea," *State v. Albright*, 564 S.W.3d 809, 817 n.5 (Tenn. 2018), but those differences are not material in this case. We will refer to Defendant's pleas as no contest pleas.

he was standing beside the victim, and that's when we believe that he fired the fatal shot.

Shortly after giving the statement where [Defendant] put the gun in Logan Brown's hand, he sent out a grievance form basically stating, I got to talk to you about what we just talked about. It was self-defense, knives was [sic] involved. I'm taking my charge. I am still cooperating. Which the State would have argued at trial, it's not a self-defense when you shoot someone in the back, that that's a knowing killing.

Lastly, there would have been testimony from other witnesses that were at the club that would have stated that they did see [Defendant] fire the shot. And that person was here and willing to give testimony.

Upon questioning by the trial court, Defendant indicated that he understood the charges against him, the range of punishment for the offenses, his right to plead not guilty and proceed to trial, his right to confront and cross-examine witnesses, and his right against compelled self-incrimination. Defendant acknowledged that he signed a waiver of his right to a jury trial. The trial court informed Defendant that "[t]he witnesses are here, the jury is in another room, and the matter was set for trial today. However, by going through this proceeding, there will not be a trial by jury and will not be an appeal. This is your day in court." Defendant responded, "Yes, sir, I understand."

The trial court explained to Defendant that he was entering no contest pleas to the lesser-included offense of second degree murder, which carried a sentence of 15 to 25 years with 100 percent service, and to felony reckless endangerment, which carried a sentence of one to two years with 30 percent service. The trial court asked Defendant whether he felt he had sufficient time to discuss his case with his trial counsel, and Defendant responded, "[h]onestly I do not feel like I had enough time, but we should proceed, I guess." Defendant stated that he was satisfied with his counsel's representation but that he had "very brief" discussions with trial counsel because Defendant was incarcerated "all the way in Morgan County, Wartburg, so [they] ha[d]n't had that much time to just really go over some things." The trial court accepted Defendant's pleas and scheduled a sentencing hearing.

At the outset of the November 15, 2019 sentencing hearing, defense counsel announced to the trial court that Defendant wished to withdraw his pleas. Upon questioning by defense counsel, Defendant testified that he had not "had enough time" and that he "really want[ed] the position to explain [him]self in this matter, prove [his] innocence." Defendant acknowledged that he was facing a potential life sentence if his motion was granted and his case proceeded to trial. The trial court took Defendant's motion

under advisement and subsequently entered an order denying the motion and resetting Defendant's sentencing hearing.

The trial court conducted a sentencing hearing on December 19, 2019. A presentence report was admitted into evidence, and several witnesses testified. Matt Pugh, a special agent with the Tennessee Bureau of Investigation, testified that while Defendant's case was pending, several witness statements were posted on Facebook. Agent Pugh testified that discovery was provided to Defendant through defense counsel, and the discovery materials contained statements by witnesses of the shooting. Agent Pugh learned that the witnesses' statements had been posted on Facebook by members of the "Kitchen Crip" gang, with which Defendant was affiliated, and there were monitored communications between Defendant and other gang members regarding the witnesses "being snitches." According to Agent Pugh, one of the witnesses, whose statement was posted on Facebook, was "shot at" and another was "shot and killed" after the shooting at Keeley's Club. Agent Pugh investigated the Facebook postings as witness intimidation.

Brenda Johnson, the victim's mother, testified that the victim was 25 years old at the time he was killed. She testified that the victim had been home to celebrate Thanksgiving and his upcoming birthday at the time of the shooting. The victim worked at Nissan in Smyrna, and he had served in the military. Ms. Johnson read an impact statement expressing her grief over her son's murder. Other friends and family members of the victim also testified and gave victim impact statements. They described the victim as "ambitious" and "full of life."

Defendant's father testified that Defendant "was not raised to be [in] a gang." Defendant's father and grandfather had both served as the pastor of their church. Defendant's father described him as "a gifted individual" who "got off track." Defendant's mother testified that Defendant was generous and that he "just had a way with people. Everybody who hung around, liked him." She testified that Defendant was bullied as a child. Defendant's parents sought help for Defendant but, his mother testified, "[e]ventually, [they] just couldn't do anything."

Defendant made a statement in allocution. Defendant stated that he "wish[ed] to be a positive influence from this point on." He stated that he wanted an opportunity "to give the message, you know, or kind of try to help our younger people today, you know, how being involved with the wrong crowd, you know, can't get side tracked." Defendant expressed his sympathy for the victim's family, stating "my heart does – it does truly go out to the families. I wish – I really do wish the truth could be seen clearly, but I guess in due time, it's all in God's plan."

At the conclusion of the sentencing hearing, the trial court considered the factual basis for the pleas and the evidence presented at the sentencing hearing. The trial court observed, "[t]he [c]ourt is sorry for the true tragedy this is for both families." The trial court also considered the presentence report, which indicated that Defendant "had a similar conviction out of Tipton County, Docket Number 8302, for attempt to commit first degree murder" and that Defendant "was on probation at the time of this killing." Considering the nature and characteristics of the criminal conduct involved, the trial court observed that "the victim was shot in the back by [D]efendant." The trial court also considered Defendant's statement in allocution but found that Defendant had an extensive criminal history, including a prior conviction for attempted first degree murder and several misdemeanor convictions.

The trial court applied two enhancement factors: that Defendant had a previous history of criminal convictions in addition to those necessary to establish the appropriate range; and that Defendant was on probation at the time of the offense. The trial court found no applicable mitigating factors. The trial court sentenced Defendant as a Range I standard offender to 22 years for his second degree murder conviction with a release eligibility of 100 percent and ordered that it be served consecutively to his sentence for a prior conviction in Tipton County. The trial court imposed a concurrent sentence of one year for Defendant's felony reckless endangerment conviction.

**Analysis**

*Motion to withdraw pleas*

On appeal, Defendant argues that the trial court abused its discretion by denying his motion to withdraw his no contest pleas because he did not knowingly and voluntarily enter his pleas. The State responds that Defendant has failed to demonstrate a fair and just reason for withdrawing his pleas and the trial court properly denied Defendant's motion. We agree with the State.

This Court reviews a trial court's decision regarding a motion to withdraw a guilty plea for an abuse of discretion. *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Crowe*, 168, S.W.3d 731, 740 (Tenn. 2005)). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *Phelps*, 329 S.W.3d at 443 (citing *State v. Jordan*, 235 S.W.3d 136, 141 (Tenn. 2007)). A trial court can also abuse its discretion when the court fails "to consider the relevant factors provided by higher courts as guidance for determining an issue." *Id.* (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)).

Pursuant to Rule 32(f) of the Tennessee Rules of Criminal Procedure, "[b]efore [a] sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason." Rule 32 does not specify what constitutes a "fair and just reason" for withdrawing a guilty plea. In *Phelps*, our supreme court adopted a "non-exclusive multi-factor test" to be used in determining if there are fair and just reasons to allow withdrawal of a guilty plea. *Phelps*, 329 S.W.3d at 447. Those factors are:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to with draw is granted.

*Id*. (quoting *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008)) (internal quotations omitted). "[W]here a trial court applies the correct nonexclusive multi-factor analysis and determines that the balance of factors weighs in the defendant's favor, the trial court should allow the defendant to withdraw his plea, even if the defendant's reasons could be characterized as a 'change of heart.'" *Id*. at 448. However, "a defendant should not be allowed to pervert this process into a tactical tool for purposes of delay or other improper purpose." *Id*.

In a written order denying Defendant's motion to withdraw his pleas, the trial court found that Defendant voluntarily and intelligently entered his pleas. The trial court noted that Defendant had entered pleas to prior offenses "on several occasions[,] including once in Tipton County Circuit Court to attempt to commit murder." The trial court found that Defendant "understood what he was doing and testified he understood." Examining the *Phelps* factors, the trial court found that Defendant moved to withdraw his pleas on the date of his scheduled sentencing hearing; that Defendant did not file a written motion to withdraw his pleas; that Defendant gave no reason for failing to file a motion earlier in the proceedings, indicating the "absence of a valid reason" for the delay; that the proof of Defendant's guilt was "overwhelming" despite Defendant's assertion that he was innocent; and that Defendant had "a continuous history of criminal behavior since becoming an adult" and "had prior experience with the criminal justice system." Additionally, the trial court noted prejudice to the State if Defendant's motion was granted because "witnesses were present and the case ready to proceed to trial . . . when [D]efendant entered the plea[s]." The trial court concluded that Defendant failed to establish a "fair and just reason" to support the withdrawal of his pleas.

- 6 -

The detailed findings by the trial court go directly to the *Phelps* factors. The trial court properly considered the timing of Defendant's motion and the absence of a valid reason for the delay in filing, Defendant's assertion of innocence, the circumstances surrounding the entry of his pleas, his relative intelligence and familiarity with the criminal justice system, and the potential prejudice to the State if the motion is granted. *Phelps* is the applicable legal standard for determining whether a fair and just reason exists to allow a defendant to withdraw a plea. We find that the trial court did not abuse its discretion in denying Defendant's motion. Defendant did not demonstrate a fair and just reason to withdraw his plea. Defendant is not entitled to relief on this issue.

*Sentencing*

Defendant contends that his 22-year sentence for second degree murder is excessive. The State responds that the trial court acted within its discretion in sentencing Defendant. We agree with the State.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2019); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2019).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. T.C.A. § 40-35-210(e) (2019); *Bise*, 380 S.W.3d at 706. The party challenging the sentence on appeal

bears the burden of establishing that the sentence was improper. T.C.A. § 40-35-401 (2019), Sentencing Comm'n Cmts.

Second degree murder is a Class A felony. T.C.A. § 39-13-210(c)(1) (2019). The sentence range for a Range I, standard offender, convicted of a Class A felony, is not less than fifteen (15) nor more than twenty-five (25) years. *See* T.C.A. § 40-35-112(a)(1) (2019). Within-range sentences that are supported by the record and reflect that the trial court properly applied the purposes and principles of sentencing are reviewed for an abuse of discretion, with a presumption of reasonableness. *Bise*, 380 S.W.3d at 707-08. In this case, the trial court considered the factors set out in section 40-35-210 and stated on the record the reasons for the sentence it imposed. Thus, the trial court's sentencing decisions are entitled to a presumption of reasonableness, and we will review Defendant's within-range sentence under an abuse of discretion standard with a presumption of reasonableness.

Defendant does not challenge the trial court's application of enhancement factors, nor does he suggest that the trial court should have applied any mitigating factors. In his brief, Defendant merely asserts that the enhancement factors applied by the trial court "arguably apply to most defendants in Tennessee courts and a[n] upper-range sentence would likely apply to most defendants. Therefore[,] the enhancement factors would not weigh in favor of an upper-range sentence." Defendant cites no authority for this position. To the contrary, "the application of a single enhancement factor can justify an enhanced sentence." *State v. John M. Banks*, No. M2019-00017-CCA-R3-CD, 2020 WL 5015888, at *10 (Tenn. Crim. App. Aug. 25, 2020), *perm. app. denied* (Tenn. Dec. 2, 2020) (citing *State v. Bolling*, 75 S.W.3d 418, 421 (Tenn. Crim. App. 2001)). Moreover, we note that the trial court would have been within its discretion to impose a maximum in-range sentence even in the absence of applicable enhancement factors so long as the court's reasoning was consistent with the purposes and principles of sentencing. *State v. Christopher Scott Chapman*, No. M2011-01670-CCA-R3-CD, 2013 WL 1035726, at *9 (Tenn. Crim. App. Mar. 13, 2013), *no perm. app. filed* (citing *Bise*, 380 S.W.3d at 706; *State v. Carter*, 254 S.W.3d 335, 345-46 (Tenn. 2008)).

We reiterate that this Court will uphold a trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. In any event, the record supports the court's application of enhancement factors (1) and (13). Accordingly, the trial court did not abuse its discretion in sentencing Defendant to 22 years for his second degree murder conviction. Defendant is not entitled to relief.

CONCLUSION

- 8 -

Based on the foregoing, we affirm the judgments of the trial court.


_____

TIMOTHY L. EASTER, JUDGE